## Dreyer-Whitehead & Goedecke, Inc. et al. v. Land et ux.

October 15, 1948.

Rehearing denied January 28, 1949.

114

John Noland for appellants.

Thomas D. Shumate for appellees.

OPINION OF THE COURT BY CLAY, COMMISSIONER—
Reversing in part, affirming in part.

This action was brought in equity by appellants to recover the purchase price of a second hand Diesel bulldozer and other equipment, to foreclose a mortgage on this machinery, and to set aside a conveyance made by the principal defendant (hereinafter referred to as "appellee") to his wife. Appellee counterclaimed for damages based on alleged expenditures for repairs to the machinery. The Chancellor denied appellants recovery for the purchase price of the bulldozer, refused to set aside the conveyance, and dismissed appellee's counterclaim. Both parties appeal from so much of the judgment as is adverse to them.

On March 19, 1947 appellants sold to one Roy Long (not a party to this action) a second hand Caterpillar Diesel bulldozer for the sum of $3,500. A written contract was executed which stipulated, among other things: "Bulldozer is sold 'as is' and 'whereis' with no guarantee or warrantee implied, spoken or written of any kind" * * *

The note executed for this purchase was payable in ten days, but was not paid. On April 18 Long executed a chattel mortgage to secure the payment of the purchase price, which described the bulldozer and stated, "being the same property heretofore sold." Shortly thereafter he purchased from appellants for $250 some complementary equipment. Long never made any payments for this bulldozer or the additional equipment, although he used it from and after the date of purchase.

On May 23, 1947 Mr. Goedecke, President of the corporate appellant, met appellee who had become a

partner of Long in the construction and excavation business. After negotiation, appellee agreed to purchase the machinery individually and to assume the indebtedness of Long. This transaction was consummated by the execution of a written contract between appellants and appellee. This contract recited, among other things: (our italics) ''That for and in consideration of the agreements and *assignments* made herein, and the assumption by the first party of *a certain contract for the sale of certain machinery,* which is set out and described in a mortgage * * * dated the 18th day of April, 1947,'' * * *

the machinery ''is this day turned over'' to appellee who ''hereby agrees to keep up and pay the said indebtedness as set out in the mortgage, and will pay same *according to the contract* entered into'' * * *

This agreement was not only signed by appellee and appellant, but also by Long.

Thereafter the bulldozer was used by appellee in excavation work, and it was operated at various times by the original purchaser, Long, as appellee's partner or employee. No part of the purchase price was paid, and about a month later, appellee expressed dissatisfaction with the machinery and abandoned it.

Appellee attempted to prove that: he did not know anything about bulldozers; he informed the seller of the use which he intended to make of the one here involved; the seller assured him the machinery was in good working condition and suitable to perform general excavation work; he relied on such representations; and such representations were false because the bulldozer was worthless. Appellee's defense is based on misrepresentation and an implied warranty under KRS 361.150, subsection 1.

These defenses must fail if the original contract between appellants and Long was a constituent part of the new agreement. If so, the written terms of sale are controlling and appellee cannot rely on oral representations of a contradictory nature. Hopkinsville Motor Company v. Massie, 228 Ky. 569, 15 S. W. 2d 423. Nor may he rely upon an implied warranty inconsistent with the writing. KRS 361.710; Graves Ice Cream Co.

v. Rudolph W. Wurlitzer Co., 267 Ky. 1, 100 S. W. 2d 819.

It is appellee's contention that he never saw the sales contract between appellants and his partner Long. However, the facts and circumstances convince us that appellee had knowledge, or must be charged with knowledge, of its terms. The agreement between appellants and appellee in two places specifically referred to the "contract" between appellants and Long. This in itself gave appellee adequate notice, without considering other factors, that a sales agreement existed under which this machinery was originally purchased by Long.

Even had the new agreement failed to refer to the contract with Long, this transaction was a novation and appellee was simply stepping into the shoes of his partner. He was acquiring title to the same machinery, for the same price, and undertook to pay the obligation under the identical terms set out in Long's mortgage. He could not accept the benefits of this contract without assuming its unfavorable incidents. Under the original terms of sale, all warranties were expressly excluded. Thus appellee could not rely on a breach of warranty to offset the purchase price.

The conclusion just reached also disposes of appellee's counterclaim for damages. His further contention that the contract was rescinded when he complained of the bulldozer's operation is wholly lacking in merit.

The lower Court correctly adjudged appellant was entitled to recover the sum of $250, the sale price of the complementary equipment. There was no sufficient defense to appellants' claim for the sale price of the bulldozer ($3,500), and the Court erroneously dismissed such claim. Appellee's counterclaim was properly dismissed, and the Court rightly refused to set aside appellee's conveyance on the basis of the evidence introduced in this action.

The judgment is reversed on the original appeal and affirmed on the cross-appeal, with directions to enter a judgment for appellants consistent with this opinion.