## HUMMER v. CARMALT.

(Court of Appeals of District of Columbia. Submitted December 4, 1923.
Decided February 5, 1924.)

### No. 3947.

1. Sales ⊚⇒445(4)—In action by automobile buyer, submitting issue of satisfactory demonstration to jury, held error.

Where an automobile was sold "subject to satisfactory demonstration," permitting the buyer to go to the jury on the question whether the automobile had been satisfactorily demonstrated, after plaintiff had driven the car for seven weeks over a distance of 2,400 miles, "without the slightest difficulty, except such as are incident to such a mileage," *held* error.

2. Sales ⊚⇒267—Standard automobile warranty held to preclude recovery under implied warranty.

The scope of the "standard warranty" required of all automobile manufacturers by the National Automobile Chamber of Commerce *held* sufficiently broad to preclude a recovery on an implied warranty.

Appeal from the Supreme Court of the District of Columbia.

Action by James W. Carmalt against Walter Lester Hummer, proprietor of the Hummer Motor Sales Company. Judgment for plaintiff, and defendant appeals. Reversed, and case remanded for a new trial.

P. H. Marshall, of Washington, D. C., for appellant.

Leon Pretzfelder and Ralph Fleharty, both of Washington, D. C., for appellee.

Before ROBB and VAN ORSDEL, Associate Justices, and BARBER, Judge of the United States Court of Customs Appeals.

ROBB, Associate Justice. In this suit damages in the sum of $1,800 were awarded the plaintiff, appellee here, against the defendant, appellant here, under a declaration alleging in substance, in separate counts, breaches of express and implied warranty in the sale of an automobile by the defendant to the plaintiff. When the car was abandoned by the plaintiff, it had been run approximately 6,900 miles.

The plaintiff is a lawyer. On March 17, 1921, he visited the local automobile show, saw a Lexington touring car, which was being exhibited by the defendant firm, and then and there purchased it from defendant's agent. Plaintiff introduced in evidence "the contract signed by him." The material part of the contract reads as follows:

"You are hereby authorized to enter my order for Lex. touring automobile, model T, color B special, equipped as listed in catalog, to be delivered in Washington on or about Saturday. Price delivered $3,250.00, 5 cord tires as is at present. Subject to satisfactory demonstration. Del. 3/19/21. * * *

"[Signed] Jas. W. Carmalt, Purchaser, 717 Munsey Bldg.

"J. C. Steward, Salesman.

"Hummer Motor Sales Co.

"This agreement constitutes the entire contract between both parties, and there are no understandings, verbal promises, or representations of any kind not printed or written on this sheet. The purchaser acknowl-

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

edges the receipt of a copy of the above agreement, and has no understandings, verbal or otherwise, differing from it."

On the back of this contract was printed the following:

"Standard Warranty.

"Our warranty is that required of all automobile manufacturers by the National Automobile Chamber of Commerce, and is as follows:

"We warrant each new motor vehicle manufactured by us to be free from defects in material and workmanship under normal use and service, our obligation under this warranty being limited to making good at our factory any part or parts thereof which shall, within ninety (90) days after delivery of such vehicle to the original purchaser, be returned to us with transportation charges prepaid, and which our examination shall disclose to our satisfaction to have been thus defective; this warranty being expressly in lieu of all other warranties, expressed or implied, and of all other obligations or liabilities on our part, and we neither assume nor authorize any other person to assume for us any other liability in connection with the sale of our vehicles.

"This warranty shall not apply to any vehicle which shall have been repaired or altered outside of our factory in any way so as, in our judgment, to affect its stability or reliability, nor which has been subject to misuse, negligence, or accident, nor to any commercial vehicle made by us which shall have been operated at a speed exceeding the factory rated speed, or loaded beyond the factory rated load capacity.

"We made no warranty whatever in respect to tires, rims, ignition apparatus, horns or other signaling devices, starting devices, generators, batteries, speedometers, or other trade accessories, inasmuch as they are usually warranted separately by their respective manufacturers."

The car was duly delivered, and on May 10th, or about seven weeks thereafter, plaintiff wrote the Lexington Motor Car Company in part as follows:

"On March 17th of this year I bought the 'Minute Man Six' car which your company had on exhibition at the automobile show here. The car is a very handsome one, and the motor in it is wonderful. I have run it now approximately 2,400 miles without the slightest difficulty, except such as are incident to such a mileage. On the other hand, the experience of myself and my wife with the service station here is beyond description."

The writer then, in considerable detail, set forth his grievances against the service station, and characterized the difficulties of which he complained as "minor matters, that any shopman ought to be able to adjust without difficulty." The letter then continued:

"I submit all these matters for your consideration simply because I feel that it is due you to know the treatment to which your very excellent car is being subjected here. I have no criticism whatever to make of the car, except the horn, but any prospective customer who consults me about the service that may be expected to be received in Washington by the owner of a Lexington car will receive the full benefit of my experience. I may say that the car is of sufficient appearance to bring many inquiries to us."

On May 18th the plaintiff, responding to a letter he had received from the Motor Car Company to reply to his letter of the 10th, said in part:

"After some rather unpleasant experiences with the Messrs. Hummer, we finally came to a solution of the problem which seems to be complete. Mr. Lester Hummer, who has charge of the Washington office, met the situation in what I consider a very good way, and by giving our car his personal atten-

tion succeeded in getting most of the minor troubles about which I wrote you cleared up. His ultimate treatment of the situation reflects credit upon your organization and I hasten to advise you of the solution."

Early in June, and after the car had been run approximately 4,000 miles, plaintiff complained of burned-out bearings and some alleged minor defects, and finally employed an attorney to represent him. The car was taken to defendant's service station, and, although an inspection indicated that the cause of the burned-out bearings was lack of lubrication, defendant replaced them and overhauled the car. Plaintiff was represented by independent mechanics, familiar with automobile construction, who inspected the car in conjunction with defendant's mechanics, and as a result the car again was taken over by the plaintiff. The following communication, under date of July 1, 1921, which was seen and approved by the plaintiff, then was sent the defendant by plaintiff's counsel:

"It is understood that Lexington touring car model T, No. 30133, motor No. 527, covered by conditional bill of sale dated March 23, 1921, from the Hummer Motor Sales Company to James W. Carmalt underwent mechanical adjustment and final inspection by Mr. Rudd, the factory representative of the Lexington Motor Company, and so far as my knowledge goes the motor now appears to be in good running order. The return of the car is therefore accepted."

Prior to the sending of this letter, reports had been made to plaintiff's counsel by the mechanics employed by him, so that the letter was written with full knowledge of the conditions then existing. It may be added that two of these mechanics testified that, in their judgment, the plaintiff himself was responsible for the burned-out bearings by attempting to run the car without oil.

Finally, during the month of August, while the car was being driven by plaintiff's wife, the carburetor connection was broken, apparently from the loosening of the generator shaft. Defendant, at plaintiff's request, sent for the car, which was driven in under its own power. Plaintiff thereafter declined to take it back and brought this suit.

The declaration is on four counts, the first of which apparently is based upon the theory that the defendant never satisfactorily demonstrated the car, while the second evidently is intended to be based upon the so-called standard warranty. It is unnecessary to notice the third count. The fourth declares upon an implied warranty. The court, over the objection and exception of the defendant, submitted all three of plaintiff's theories to the jury, and a general verdict was returned. Other errors are assigned, but only one need be noticed under our view of the case.

[1] The first question logically is as to the scope and effect of the contract. It contains an express stipulation that "there are no understandings, verbal promises, or representations of any kind" not contained therein. The standard warranty, however, is not outside the contract. While it purports to be the warranty required "of all automobile manufacturers by the National Automobile Chamber of Commerce," it in fact was adopted by the defendant and made a part of the contract between the parties. Loxterkamp v. Lininger Impl. Co., 147 Iowa, 29,

125 N. W. 830, 33 L. R. A. (N. S.) 501; 24 R. C. L. 158. What, then, was the limit of defendant's obligation under this contract?

The car was sold "subject to satisfactory demonstration." Interpreting this provision in the light of the other provisions in the contract, it is apparent that it was intended to mean nothing more than that the plaintiff should have a reasonable opportunity to determine, by actually running the car under service conditions, whether it functioned normally; that is, satisfactorily. A trial of a few days, at most, should have sufficed for this purpose. And yet the plaintiff, after driving the car for seven weeks over a distance of 2,400 miles, "without the slightest difficulty except such as are incident to such a mileage," was permitted to go to the jury on the question whether the car had been satisfactorily demonstrated. This was error.

As to the provisions of the standard warranty, the evidence shows that defendant fully complied therewith. Indeed, while this warranty expired in 90 days, defendant voluntarily replaced parts subsequent to that period.

[2] In our view, the court also erred in submitting the fourth count to the jury. Not only did the parties agree that there should be no understandings or representations of any kind, other than those contained in the contract, but the express warranty contained the provision that it was "in lieu of all other warranties, expressed or implied." In addition, the scope of this standard warranty was sufficiently broad to preclude the plaintiff from recovering under an implied warranty. De Witt v. Berry, 134 U. S. 306, 10 Sup. Ct. 536, 33 L. Ed. 896; Shepherd v. Gilroy, 46 Iowa, 193; Bagley v. Gen. Fire Ext. Co., 150 Fed. 284, 80 C. C. A. 172.

Defendant requested the court to submit to the jury the question whether all matters of difference between the parties were compromised and settled by the negotiations culminating in the communication of July 1, 1921, from plaintiff's counsel to defendant. The court rejected the prayer as offered, and submitted the question to the jury on the theory that the provision, "subject to satisfactory demonstration," should be considered in this connection. We already have indicated what constituted a demonstration of this car, and that requirements in this regard had been met by defendant prior to the grievances culminating in the compromise under consideration. Defendant therefore was entitled to have this question of compromise submitted to the jury without reference to the question of demonstration.

It results that the judgment must be reversed, with costs, and cause remanded for a new trial.

Reversed and remanded.