[File No. 6826]

## THE DEERE & WEBBER COMPANY, a Corporation, Appellant, v. J. J. MOCH, Respondent.

(3 NW (2d) 471, 139 ALR 1270)

Opinion filed April 17, 1942

*Sullivans, Fleck & Higgins, Robert Chesrown,* and *Morrison & Skaug,* for appellant.

*Scott Cameron* and *Charles Coventry,* for respondent.

MORRIS, J.  This action is brought by the plaintiff to recover possession of three items of farm machinery sold by the Farmers Company to the defendant.  The property is described in a "sale contract" which constitutes the basis upon which the plaintiff claims a right to recover possession of the property.  This contract, which was assigned to the plaintiff, dated December 11, 1939, reads as follows:

"Received of Farmers Company, whose post office address is Kintyre, State of North Dakota, the following described personal property:

One John Deere Model D Tractor with rubber front tires and 12–75x28 Rear Rubber Tires and heavy cast rear wheels.  Serial No. 144834

One John Deere No. 66 four bottom plow

One John Deere S.A. B Basin Disk Harrow

for which I agree to pay the vendor, or his assigns, the sum of $2004.00, as follows:

$907.80........................ in cash or property herewith.
$533.60........by note due Sept. 1st 1940
$562.60........by note due Sept. 1st 1941

"Above notes drawing interest at the rate of 6% per annum from April 1st, 1940.

"Notes of the vendee and renewals thereof taken by the vendor, or his assigns, are not accepted as payment but only to evidence the unpaid balance of the purchase price.  It is agreed that the title and ownership of said property is to remain in the vendor, or his assigns, until all of said purchase price is fully paid in cash and that thereupon the title and ownership is to pass to me.

"If default shall be made in the payment of any of said notes or the interest thereon, or in the performance of any of the covenants herein contained, the holder hereof at his option may declare the entire balance due and payable immediately and may thereupon (1) repossess said property without demand or notice, using such force as may be necessary, in which case all payments heretofore made hereon shall be retained by him as liquidated damages for the non-performance of this contract; (2) treat the sale as absolute, in which case I agree to pay the entire balance due hereunder upon demand, together with the

interest thereon and all costs of collection or a reasonable attorney's fee; (3) foreclose this contract in equity, in which case I agree to pay any deficiency remaining after such foreclosure; (4) exercise any other remedy now or hereafter given him by law."

"I further agree to take good care of said property and to be responsible for its loss by fire, theft, or other casualties and not to remove it from the location designated below without first obtaining the written consent of vendor, or its assigns. It is understood and agreed that no other agreements or warranties, verbal or written, expressed or implied, shall limit or qualify the terms of this contract. (Time is the essence of this contract.)"

"Dated this 11th day of December, 1939."

The defendant filed an answer and counterclaim in which he denied default and alleges that he bought the machinery for farming purposes and that it was understood and agreed that this machinery was satisfactory and adapted for the use for which it was being sold; that it was in good working condition and would perform the functions expected, required and intended to be performed which were the usual functions of farm machinery of like character and design. The answer also alleges that the plow was utterly useless and worthless and that there was consequently a failure of consideration for the contract of which the plaintiff had full knowledge.

The defendant's counterclaim, after realleging most of the answer, claims damages for breach of warranty by reason of faulty construction and design and the failure of the machinery to perform the work for which it was intended.

The defendant also counterclaims for special damages by reason of the fact that he lost the use of 150 acres of farm land during the season of 1940, to his damage in the sum of $1,000. He claims further, special damages for loss of hired labor and gasoline expended in attempting to operate the defective machinery and for money and labor expended in hiring other machinery.

The defendant also claims damages for partial loss of crops raised upon land improperly prepared by the defective machinery. The trial court excluded evidence of damage based upon the last allegation.

The case was tried to a jury which returned the following verdict: "We the jury in the above entitled action find for the plaintiff for the

possession of the property involved as security for the balance due on the purchase price, after allowing thereon the sum of 796.58 Dollars which we find to be the defendant's damages for breach of warranty."

After both parties rested the plaintiff made a motion for a directed verdict which was denied. Judgment was entered on the verdict. Within proper time the plaintiff made a motion for judgment notwithstanding the verdict or for a new trial. This motion was also denied. The plaintiff thereupon appealed to this court from the order denying the motion for judgment notwithstanding the verdict or for a new trial and from that portion of the judgment allowing the defendant the sum of $796.58, damages for breach of warranty. The plaintiff seeks a new trial or a judgment notwithstanding the verdict upon two major premises. They are that the trial court erred in refusing to recognize and give effect to the provisions in the contract regarding agreements or warranties and the insufficiency of the evidence to sustain the verdict and judgment.

The record discloses these facts. The defendant, his father and his brother, operate a large farm of about 1,500 acres. On or about December 11, 1939, the defendant purchased a tractor, a plow and a disk harrow from the Farmers Company. This machinery was manufactured by the plaintiff. In the course of the transaction, the defendant traded in an old tractor and plow. The total purchase price was $2,004. After deducting an allowance for the old machinery and a cash payment of $100, there was left a balance of $1,106.29, for which the defendant executed two notes described in the sale contract which we have heretofore quoted. The tractor was used to grind some feed during the winter following the purchase. The plow, however, was not and could not be used until the following spring. The defendant makes no complaint concerning the tractor or the harrow. His only complaint is as to the operation of the plow. At the time the purchase was made, the discussions and representations were participated in by the manager of the Farmers Company and by one J. H. Engh, an employee of the plaintiff known as a block man. The defendant testified that "The new plow was supposed to have no clearance, and therefore take more trash, and in that respect it was supposed to be better than the other, and the stub beams could be replaced without taking out the beams."

In the spring, following the sale, the defendant tried out the plow for three days and was unable to make it work. He then complained to the manager of the Farmers Company. He used the plow part of the time until about three weeks later when Mr. Engh and another man came out to the defendant's farm and observed the plow in operation. The following day they came back again accompanied by the manager of the Farmers Company. About two weeks later, Mr. Strandland, the designer of the plow, came out to examine it. He was accompanied by the manager of the Farmers Company, his son, Mr. Engh and the sales manager of the Minneapolis Division of the plaintiff company. After spending some time in operating the plow, according to the defendant's testimony, "they were satisfied that the plow wasn't working good enough to prepare a seed bottom, and Mr. Strandland agreed with me, that he would do the same, that is, he wouldn't use the plow." Sometime later, probably in July, another man brought out some new parts and tried them on the plow on two succeeding days. He did not leave these parts, however, but took them with him when he left. During all of this time the defendant repeatedly complained about the failure of the plow to operate properly. The defendant refused to pay more on the three items of machinery mentioned in the sales contract. The plaintiff brought this action and took possession of the machinery and still retains possession.

Both as a defense and as a basis for recovery upon his counterclaim, the defendant relies upon the express warranty that the new plow was better than his old one that he traded in, and upon the warranties of quality and fitness which the law implies. The latter warranties are found in § 6002a15, 1925 Supp. to Comp. Laws, which provides that: "(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies upon the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for that purpose."

There is no question but what the manager of the Farmers Company and Mr. Engh, the plaintiff's block man, knew at the time the sale was being negotiated that the plaintiff was purchasing the machinery for general farming purposes and intended to use it on his near-by farm. These men were in the business of dealing with farm machinery. One

654

of them represented the manufacturer, the other was manager of the local dealer in that type of equipment. The machinery thus sold comes clearly within the provisions of our statute regarding the implied warranty. The goods were warranted thereby to be reasonably fit for the purpose for which all parties intended them to be used.

The plaintiff takes the position that the sale contract contains a disclaimer and waiver of all warranties. It bases this contention upon the following provision: "It is understood and agreed that no other agreements or warranties, verbal or written, expressed or implied, shall limit or qualify the terms of this contract." We hold that the sale of the machinery to the defendant comes within the statutory provision for implied warranties and that the evidence is sufficient to justify the jury in finding a breach of warranty. Palaniuk v. Allis-Chalmers Mfg. Co. 57 ND 199, 220 NW 638. However, if the plaintiff's contention is correct, the defendant may not recover regardless of the implied warranty or breach thereof because he has, by the terms of the sale contract, waived all warranties. Minneapolis Steel & Machinery Co. v. Casey Land Agency, 51 ND 832, 201 NW 172.

In Minneapolis Threshing Mach. Co. v. Hocking, 54 ND 559, 209 NW 996, this court determined that parties to a written contract of sale may exclude and negative implied warranties arising and available under the Uniform Sales Act. The order that the purchaser signed in that case and which constituted the basis of the sale, contained a statement that "all statutory or implied warranties except as to title are hereby expressly negatived and excluded." The plaintiff contends that the provision regarding warranties in the sales contract in this case must be given the same construction and effect as the provision excluding implied warranties in the order involved in the Hocking Case. We are unable to agree with this contention. The order in the Hocking Case was signed by the purchaser for what it purported to be—an order for machinery. Its acceptance by the vendor constituted the contract upon which the sale and purchase was made. The sale contract in the case before us is an entirely different instrument. It starts out as a receipt for property, delivery of which had been already made. It then contains many of the provisions common to conditional sales contracts. It sets forth an agreement to pay a definite purchase price in instalments and provides for retention of title by the vendor until final pay-

ment and the right to repossess the property in event of default, or treat the sale as absolute and recover the balance due.

An implied warranty is not essentially a part of the agreement made by the parties themselves. It is imposed by operation of law and becomes a part of the contract by virtue of the statute. Hamman v. Advance-Rumely Thresher Co. 61 ND 505, 238 NW 700; Bakke v. Nelson, 68 ND 66, 276 NW 914. The Supreme Court of Minnesota in Bekkevold v. Potts, 173 Minn 87, 216 NW 790, 59 ALR 1164, says: "An implied warranty is not one of the contractual elements of an agreement. It is not one of the essential elements to be stated in the contract, nor does its application or effective existence rest or depend upon the affirmative intention of the parties. It is a child of the law. It, because of the acts of the parties, is imposed by the law. It arises independently and outside of the contract. The law annexes it to the contract. It writes it, by implication, into the contract which the parties have made. Its origin and use are to promote high standards in business and to discourage sharp dealings. It rests upon the principle that 'honesty is the best policy' and it contemplates business transactions in which both parties may profit. Defendant's claim does not commend itself to us as consistent with the honesty of purpose with which they are entitled to be credited in their dealings with their customers. The doctrine of implied warranty should be extended rather than restricted." A provision, in a contract under which it is sought to negative or exclude the implied warranties provided by our statute, should be strictly construed.

In Ward v. Valker, 44 ND 598, 176 NW 129, it was held that where anterior circumstances indicated the existence of an implied warranty, a printed statement in negation of warranties of any kind on the invoice of the goods sold did not operate to extinguish the implied warranty.

The sentence upon which the plaintiff relies. to strike down the warranty which the law implies as an incident of the sale and purchase of the machinery, merely provides that no warranties "shall limit or qualify the terms of this contract." This sentence neither negatives nor excludes implied warranties as was done in the Hocking Case. By implication, it concedes that such warranties may exist. This sentence

can, in no sense, be construed as a disclaimer. It is a limitation upon the effect of the warranties rather than a denial of their existence. That limitation is to the effect that such warranties do not qualify the terms of the contract. Compliance with the terms of the sale contract by paying the notes described therein would not of itself extinguish implied warranties. Northwestern Cordage Co. v. Rice, 5 ND 432, 67 NW 298, 57 Am St Rep 563. The sentence does not purport to forbid recovery under a warranty for a breach thereof. In this connection we note the case Avery Co. v. Peterson, 41 SD 442, 171 NW 204, wherein it was contended that the vendor was entitled to an instruction to the effect that if the note in suit was given after the respondent knew that the tractor did not comply with the warranty, the respondent waived the warranty. The defendant had pleaded a counterclaim for damages flowing from an alleged breach of warranty. The court said: "Here respondent is not in any manner attempting to question the validity of the note. Even a payment of the note would waive no rights under the warranty."

In this case, the defendant has pleaded a counterclaim for damages based upon breach of warranty. The sentence in the sale contract upon which the plaintiff relies does not forbid recovery for breach of warranty. It merely limits the effect of the warranty in so far as it may affect the terms of the contract. It is evident from the record, including the instructions of the court and the verdict, that the jury recognized the sale contract and did not apply the warranty as a limitation upon any of its terms. It awarded the possession of the property to the plaintiff according to the terms of the contract. On the other hand, it also recognized the existence of the warranties of fitness for the purpose for which the machinery was intended and awarded damages for the breach thereof.

It is clear that an implied warranty of fitness existed separate and apart from the sale contract and that an independent action could have been brought by the defendant for recovery of damages for breach thereof. The fact that instead of bringing a separate action the defendant sought to recover his damages as a counterclaim in the action brought by the plaintiff, lends no additional potency to the sentence

in the sale contract limiting the operation of implied warranties with regard to the terms of that contract.

The plaintiff contends that the part of the verdict and judgment allowing the defendant $796.58, damages for breach of warranty, is not supported by the evidence. The evidence is sufficient to support the existence of an implied warranty and a breach thereof.

The trial court excluded evidence regarding loss of crops and the value thereof. There is no evidence in the record, therefore, to support an award of damages based on such crops. The sale price of the plow was $280. The jury was justified in determining that the plow was worthless and that the damage resulting from the purchase of the worthless implement was equal to its value. It also appears that the defendant lost $52.50, as the expense of hired labor together with $49.40, gasoline used in operating the defective plow. Larson v. Calder, 16 ND 248, 113 NW 103; Needham v. Halverson, 22 ND 594, 135 NW 203. The total of the items thus far accounted for amount to the sum of $382. The defendant gave his notes for the total amount of $1166.29, in connection with the transaction which notes bear interest at 6 per cent. In determining the damages to be awarded to the defendant, the jury might properly allow interest at the same rate for damages resulting from the breach of warranty. This interest from December 11, 1939, to December 5, 1941, the date of the verdict, amounts to the sum of $45.50. This sum added to the items heretofore listed makes a total of $427.50. This is all of the damages for which we find support in the evidence.

The trial court in his memorandum opinion indicated that the jury may have taken into consideration the loss of time on the part of the defendant himself. However, no such item of damage is claimed in the pleadings and the court gave no instruction with regard thereto. There is no evidence to show either the amount of time lost by the defendant or its value. A finding by the jury upon this point therefore would be wholly speculative and one for which there is no foundation in the record. There is no evidence in the record that will sustain a verdict for a greater amount than $427.50. The judgment is therefore modified to provide for the sum of $427.50, as defendant's damages for breach of warranty together with defendant's costs and

disbursements upon condition that the defendant file a remission of the excess with the clerk of the District Court thirty days after the remittitur from this court is filed in the office of said clerk. Upon failure to comply with this condition a new trial will be had with costs to abide the event.

BURR, Ch. J., and CHRISTIANSON, NUESSLE, and BURKE, JJ., concur.