WHAYNE SUPPLY COMPANY, Appellant,

v.

I. H. GREGORY, Appellee.

Court of Appeals of Kentucky.

June 22, 1956.

Wheeler & Marshall, Paducah, Stites, Wood, Helm & Peabody, Louisville, for appellant.

Richard R. Bryan, Charles W. Runyan, Paducah, for appellee.

CAMMACK, Judge.

The appellant, Whayne Supply Company, instituted this action to recover the sum of

$420.27 alleged to be due from the appellee, I. H. Gregory, on an open account; the further sum of $147.75 a month, from August 7, 1953, for rental alleged to be due on a sheepsfoot roller, and sought also the recovery of the roller; or the sum of $875, its alleged value.

In his answer and counterclaim, the appellee admitted an indebtedness to the appellant on the open account in the sum of $306.58, and on the roller in the sum of $343.10. In his counterclaim, he alleged the breach of a written express warranty on the sale of a Caterpillar Model D–4 Tractor, which he claimed he had purchased from the appellant on March 2, 1953. He sought to recover the sum of $5,000, the alleged difference in the value of the tractor, as warranted, and as delivered, and the further sum of $9,000, alleged to have been the damage sustained by him because of the loss of the use of the tractor as a result of the breach of warranty. After the case was set for trial, the appellee filed an amended answer and counterclaim, again pleading the express warranty printed in the contract, and also his reliance thereon.

Apparently by consent, the case was tried before a jury. The trial resulted in the following findings:

For the appellant:

1. On the open account, $306.58,

2. On the roller, $343.10 and a finding that there was an agreed sale of the roller from the appellant to the appellee;

For the appellee on his counterclaim:

1. On the difference in the value of the tractor, $2,000.00,

2. For loss of use of the tractor and equipment, $4,000.00.

The case was tried in the lower court in three parts, namely, the open account, the sheepsfoot roller, and the D–4 tractor. We will discuss the case in the same manner.

I. The Open Account. The appellant introduced evidence showing an open account against the appellee in the amount of $420.27. This sum represented parts and labor furnished on various pieces of equipment Gregory owned between February 26, 1953 and April 28, 1954. The appellee admitted owing $306.58 on the open account. He contended, however, that the difference of $113.69 represented parts that were used to repair a new D–4 tractor (one of the subjects of the dispute) within the warranty period. The appellee contended further that in August or September, 1954, he and Marks, local manager for the appellant in Paducah, went over the account and agreed upon an amount due. Gregory admitted that nothing had been paid on the account, and Marks testified that his agreement with Gregory was conditioned upon payment of the account within a reasonable time, which he considered to be 30 days. The appellee apparently understood that the account could be paid within 10 days or two weeks; but he testified that he had never agreed to pay it at all.

The trial judge instructed the jury to find for Whayne and to award it such sum as they might believe from the evidence that Gregory owed Whayne for parts, supplies and services—the amount to be not less than $306.58 nor more than $420.27. The jury awarded the sum of $306.58.

On this appeal, the appellant contends that the trial judge was in error in submitting to the jury the question of the amount due on the open account, and that he erred in overruling its motion for a directed verdict. The appellee contends that there was sufficient evidence to justify submitting to the jury the question of the amount due on the open account.

The appellee's failure to pay the account as agreed upon between him and Marks, left the agreement an executory accord without satisfaction. An accord without satisfaction is unenforceable and does not supersede or dissolve the original claim. Moers v. Moers, 229 N.Y. 294, 128

N.E. 202, 14 A.L.R. 225. The rule in this jurisdiction is stated in Elliott v. Dazey, 19 Ky. 268, 3 T.B.Mon. 268, 269, as follows:

"It is laid down in all the books which treat of the subject, that a mere accord, without satisfaction received, is no plea in bar, in the mouth of a defendant who is sued in any action to which an accord and satisfaction may be pleaded, and one of the reasons assigned is, that no action lies on such accord, and therefore it ought not to be a bar for a defendant. Indeed if it is no defense for a defendant, it ought not to be cause of action for a plaintiff, and the rule must hold good both ways, and it may be considered as well settled, that an accord furnishes no ground for either cause of action, or defense, and of course the court below did not err in instructing the jury to disregard these counts, and the plaintiff was bound to resort to his action of tort for the fraud."

■ In view of the appellee's admission that he did not pay the debt, the appellant was entitled to recover the full amount of the account. The trial judge should have directed a verdict for the appellant in the amount of $420.27. So much for the open account.

II. The Sheepsfoot Roller. On April 7, 1953, the appellant leased to the appellee a used sheepsfoot roller for a guaranteed minimum term of four months at a rental of $147.75 per month. The written lease provided that the lease should continue in full force and effect until the leased property was returned to the appellant-lessor. On the same day, a written purchase-option was entered into by the parties. The appellee was granted the right to purchase the roller for $875, the purchase price to be credited by 90 per cent of any sums paid as rent under the lease. The option was to expire August 7, 1953. It provided that written notice of the exercise of the option be given to Whayne, the appellant. The option provided further that no modification of its terms should be binding on either party unless accepted in writing. The appellee paid rent for four months. He did not exercise the option prior to its expiration, did not pay any further rent, and did not return the roller. Gregory admitted that no written modification or extension of the contract was ever made.

The appellee admitted all the facts set out above, but stated that after the option had expired, the appellant had billed him on the open account for only the amount necessary to exercise the option. He claims also that at the meeting with Marks in August, or September, 1954, Marks agreed to accept that amount and consider the transaction a sale of the roller. Marks denied such an agreement.

The trial judge submitted to the jury the question whether, after the expiration of the option, Marks agreed to a sale of the roller to the appellee. The jury found that an agreement had been reached, and directed that Whayne recover $343.10 from Gregory; and also, that title to the roller was in the appellee. The appellant maintains that the trial judge should have (1) sustained its motion for a directed verdict; (2) allowed it recovery for rent on the roller from August 7, 1953; and (3) recovery of the roller, as provided in the lease agreement. On the other hand, the appellee maintains that under the doctrine of equitable estoppel, the appellant can not deny that the roller was sold to him; and, therefore, the appellant was not entitled to a directed verdict.

■ The trial judge erred in submitting to the jury the question of a new agreement between the appellant and appellee. It is well settled that the parties to a written agreement may vary, alter, or modify it by a subsequent oral agreement in all cases where the contract is not one required by law to be in writing. Murray v. Boyd, 165 Ky. 625, 177 S.W. 468; Shadwick v. Smith, 147 Ky. 159, 143 S.W. 1027; and John King Co. v. Louisville & N. R. Co., 131

Ky. 46, 114 S.W. 308. However, the oral modification must conform to the principles of law relating to the execution of valid contracts, including a valid consideration, in order for rights to accrue thereunder. Wallace v. Cook, 190 Ky. 262, 227 S.W. 279.

In Pool v. First National Bank of Princeton, 287 Ky. 684, 155 S.W.2d 4, 6, we said:

"It is a fundamental principle of law that a material alteration in the terms of an existing contract cannot be enforced unless a consideration for the change passes to the party against whom it is sought to enforce the altered condition. Gilmore v. Green, 14 Bush 772, 77 Ky. 772; Ogden v. Redd, 13 Bush 581, 76 Ky. 581. Neither the promise to perform an obligation nor the actual performance of it will be a good consideration for a new contract, if the obligation, promised or performed, is an obligation which the party is bound to do. by a subsisting contract with the other party, at least unless there be a compromise of a bona fide dispute with reference to the obligations or rights of the parties under the contract. * * *"

There was no new contract for the sale of the roller, for there was no consideration to support such a contract. The appellee never agreed to pay to the appellant anything, according to his own testimony. By his own admission, there was a total failure of consideration; and, therefore, there could not be a valid new agreement between the parties.

The option to purchase the roller expired on August 7, 1953. No written modification of its terms, as provided for in the option itself, was ever made. The expiration of the option left the lease as the only agreement between the parties concerning the roller. Since the roller was never returned to the appellant, it is entitled to recover all unpaid rent due thereon as provided in the lease. Furthermore, since the option to purchase the roller was never exercised, the appellant is entitled to recover the roller, or its value. The appellant was entitled to a directed verdict on this phase of the case.

III. The D–4 Tractor. On March 2, 1953, the appellee bought a new D–4 tractor from the appellant and paid for it. The printed sales contract contained the following warranty:

"We guarantee New equipment to be of first-class material and workmanship throughout, and agree to furnish free of charge F. O. B. factory, any part which may, within the time limit of the manufacturer's guarantee, prove to have been defective when furnished, the broken or defective part to be returned to the factory, charges prepaid, for inspection when requested. This guarantee is to be identical to and correspond with the guarantee given by the manufacturers of the equipment. It Does Not Apply To Used Equipment On Which There Is No Guarantee, Unless As Specifically Mentioned Above. No other warranty of fitness, condition, ability, capacity, or quality is given or implied."

Over a period of approximately 14 months following the purchase of the tractor, the appellee brought the tractor to the appellant's shop for repairs on several occasions. The appellant repaired the tractor each time and replaced parts as needed in accordance with the warranty. It was shown that between each trip to the shop the tractor was in use. It was used on an average of 86 hours per week over the 14 month period. In his counterclaim the appellee alleged breach of the express warranty to the effect that the tractor was of first class material and workmanship throughout. He asserted also his reliance on the warranty, and his subsequent damage proximately ensuing.

While the trial judge refused to allow the appellee to file an amended answer and

counterclaim, alleging breach of an implied warranty of quality and fitness, nevertheless, he instructed the jury on both the written warranty and an implied warranty of fitness and capacity.

The Uniform Sales Act, KRS 361.150, provides:

"Subject to the provisions of this chapter and of any statute in that behalf, there is no implied warranty or condition as to quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose. * * *

"(6) An express warranty or condition does not negative a warranty or condition implied under this chapter unless inconsistent therewith."

KRS 361.710 provides:

"Where any right, duty or liability would arise under a contract to sell or a sale by implication of law, it may be negatived or varied by express agreement or by course of dealing between the parties * * *."

 We have held under the Uniform Sales Act that a warranty will not be implied where the contract stipulates expressly against its existence or declares no other warranty is made. Dreyer-Whitehead & Goedecke, Inc., v. Land, 309 Ky. 113, 216 S.W.2d 413; Citizens Ice & Fuel Co. v. Fairbanks, Morse & Co., 293 Ky. 64, 168 S.W.2d 586; Graves Ice Cream Co. v. Rudolph W. Wurlitzer Co., 267 Ky. 1, 100 S.W.2d 819; Vandiver v. B. B. Wilson & Co., 244 Ky. 601, 51 S.W.2d 899. In keeping with this rule, it is obvious that the trial judge should not have submitted instructions to the jury allowing a recovery on an implied warranty on the tractor. The reasonableness of this rule is brought into focus when we consider Gregory's long period of use and his knowledge of machinery of the type in question.

 The appellant was entitled to a directed verdict on the alleged breach of express warranty. In the warranty agreement, the appellant guaranteed only that originally the tractor was in good shape, and if it was not, the appellant would replace such parts as might be defective. Over a period of 14 months the appellant replaced parts as needed, and each time noted that, before the tractor was returned to the appellee, it was in proper working order. All the evidence indicates clearly that the appellant fulfilled its contractual obligations.

The judgment is reversed, with directions to set it aside, and for the entry of a judgment consistent with this opinion.