JAMES HALL *vs.* EVERETT MOTORS, INC.

Bristol.    January 7, 1960. — March 3, 1960.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE,
& CUTTER, JJ.

*Sale,* Warranty, Of automobile.    *Evidence,* Evidence binding a party.

In an action for breach of warranty by a purchaser of an automobile
against the dealer who sold it to him, the plaintiff was bound by his
own testimony that he received a "manual," with which he was fa-
miliar, containing "the manufacturer's warranty which he accepted."
[431]

A term of a sale of a new automobile by a dealer, that "there are no war-
ranties, express or implied, made by either the dealer or the manufac-
turer . . . except . . . [a stated] manufacturer's warranty against
defective materials or workmanship" gave the buyer no warranty at
all by the dealer and barred an action by the buyer against the dealer
based on breach of warranty where, some weeks after the sale, the
automobile was destroyed by fire due to defective wiring.   [432]

CONTRACT OR TORT.   Writ in the Second District Court of
Bristol dated November 18, 1957.

Upon removal to the Superior Court, the action was tried
before *Taveira,* J.

*Charles R. Desmarais,* for the plaintiff.

*Arthur Goldys,* for the defendant.

WILKINS, C.J.    On September 18, 1956, the plaintiff
bought a new Oldsmobile sedan from the defendant, a dealer.
On November 5, 1956, the automobile, while in the plain-
tiff's garage, was damaged by fire.   In this action of con-
tract or tort there were three counts.   On count 1 for breach
of express warranty of quality and fitness, the jury returned
a verdict for the plaintiff for $3,000, but under leave re-
served the judge entered a verdict for the defendant.   On
count 2 for breach of a similar implied warranty the judge
directed a verdict for the defendant.   The plaintiff excepted
to both rulings.   On count 3 for negligent inspection the
jury returned a verdict for the defendant.

The plaintiff testified that, when he bought the automobile, he received a bill of sale and a "service policy owner manual" with which he was familiar and which contained "the manufacturer's warranty which he accepted." He is bound by this testimony. *Taylor* v. *Jacobson*, 336 Mass. 709, 716.

In so far as material, the manufacturer's warranty provided: "It is expressly agreed that there are no warranties, expressed or implied, made by either the dealer or the manufacturer . . . except the manufacturer's warranty against defective materials or workmanship as follows: 'The manufacturer warrants each new motor vehicle . . . to be free from defects in material and workmanship under normal use and service, its obligation under this warranty being limited to making good at its factory any part or parts thereof which shall, within ninety (90) days after delivery of such vehicle to the original purchaser or before such vehicle has been driven 4,000 miles, whichever event shall first occur, be returned to it with transportation charges prepaid and which its examination shall disclose to its satisfaction to have been thus defective; this warranty being expressly in lieu of all other warranties, expressed or implied, and all other obligations or liabilities on its part . . . .'"

Facts which the jury would have been warranted in finding are as hereinafter set forth. The fire, which destroyed the automobile, was due to defective wiring to the back of the left rear fender. Within three weeks after the purchase the plaintiff began having trouble with the directional signal lights. When he tried to indicate a left turn, they might flicker on the right, or on both sides, or not at all. At the time of the 1,000 mile checkup on October 16 at the defendant's service station, the defendant's employees worked upon the directional lights. After this he continued to have much the same difficulty. He brought the automobile back to the defendant's service station a week before the fire, and it was worked on again. After he left, the difficulty continued, and he had an appointment to return upon a date two days after the fire.

By the express language of the agreement all other warranties are excluded. *S. F. Bowser & Co. Inc.* v. *Independent Dye House, Inc.* 276 Mass. 289, 296. *Dekofski* v. *Leite,* 336 Mass. 127, 129. *Seigler* v. *Barrow,* 83 Ga. App. 406. *Dayton Oakland Co.* v. *Livesay,* 34 Ohio App. 302. Williston, Sales (Rev. ed.) § 239, c. 117 A. L. R. 1350. We are thus constrained to hold that there was no warranty whatsoever by the defendant dealer.

This is not the kind of an agreement which commends itself to the sense of justice of the court. It really means that the automobile is sold "as is" subject to the honest satisfaction of the nonresident manufacturer that the defect was something for which it is liable. We do not need to decide whether, to obtain the benefit of this narrow warranty, the buyer was under the obligation first to return the ruined automobile to the factory, wherever that is. We hope that should a similar case arise under the Uniform Commercial Code we shall not be so bound by precedent. G. L. c. 106, § 2–316, inserted by St. 1957, c. 765, § 1.

*Exceptions overruled.*