Edwin H. KNECHT, Plaintiff and Respondent,

v.

UNIVERSAL MOTOR COMPANY, a domestic corporation, and Ford Motor Company, a Delaware corporation, Defendants,

and

Universal Motor Company, a domestic corporation, Appellant.

No. 7838.

Supreme Court of North Dakota.

Jan. 2, 1962.

Rehearing Denied March 27, 1962.

Conmy & Conmy, Bismarck, for defendant and appellant.

Jansonius, Fleck, Smith, Mather & Strutz, Bismarck, for plaintiff and respondent.

MORRIS, Judge (on reassignment).

On November 18, 1957, the plaintiff purchased from the defendant Universal Mo-

tor Company a new Ford automobile for $3,494. Of the purchase price $1,200 was paid in cash, $1,312 by trade-in allowance on an old car, and the balance of $982, plus a service charge, was to be paid according to a retail installment contract which retained title in the seller until all of the installments of the contract were paid and gave to the seller the right to take immediate possession in event of default. None of the installments were paid.

On December 16, 1957, attorneys for the plaintiff addressed a letter to the Universal Motor Company, which was received by registered mail the following day, reciting in considerable detail the unsatisfactory operation of the automobile and demanding a rescission of the contract of sale. This letter, in part, states:

"This vehicle is now in your garage and is at your disposal. We are hereby giving you and the Ford Motor Sales Company notice of rescission of the contract and are hereby making demand for the purchase price. If the purchase price is not refunded within a reasonable time an action will be commenced for such purchase price."

On December 23, 1957, the attorneys for Universal Motor Company wrote to plaintiff, and sent a copy to his attorneys, stating:

"Pursuant to your complaint on December 14 and at your request Universal Motor Co. took your automobile in for repair pursuant to the dealer's warranty that was furnished to you at the time you bought the automobile. The repair has been fully made in accordance with the warranty in writing and is and has for some time been ready for you. The automobile is being held for you, subject to storage charges, until such time as you see fit to pick it up."

On December 19, 1957, the plaintiff brought an action to rescind the sale and to recover that portion of the purchase price that had been paid, including the trade-in allowance for plaintiff's old car. The ground alleged for rescission was breach of warranty. The defendant Universal Motor Company answered by way of general denial and by the specific allegation that:

"This Answering Defendant alleges that such sale was made pursuant to an express warranty in writing wherein this Defendant's obligation was especially limited to replacement, without charge to purchaser, of such parts as shall be returned to the dealer and as shall be acknowledged by the dealer to be defective; that this warranty was limited to defects in material and workmanship, under normal use, and for a period of ninety (90) days from the date of delivery of such product or until such product had been driven, used or operated for a distance of 4,000 miles, whichever event shall occur first; that this warranty was further limited and expressly made not to apply to any product that has been subject to misuse, negligence or accident or repairs made outside of the dealer's place of business; that this warranty was made expressly in lieu of all other warranties, expressed or implied, and constitutes a contract between the parties; * * *."

It was further alleged that the defendant examined and repaired the car, that it did find a defective camshaft which was fully repaired in accordance with the dealer's warranty, and that the automobile is and was for some time ready for redelivery to the plaintiff.

The case was tried to the court without a jury. During the trial the action was dismissed, by stipulation of the parties, as to the Ford Motor Company. The court found that the defendant did not comply with the warranty that was a part of the contract of sale and did not comply with the implied warranty of fitness provided in the law of sales (Section 51–01–16, paragraph 1, NDCC), and ordered

judgment for the plaintiff for $2,176 and costs. From the judgment entered pursuant to the order, the defendant appeals. The case was submitted to this court for trial de novo.

At the time of the sale the plaintiff signed, and the defendant accepted in writing, an order on the face of which it was stated:

"Dealer's new car warranty is shown on back of this order. It is agreed that there are no other warranties, either express or implied, covering a new car sold hereunder. In the event the car sold hereunder is a used car, it is agreed that the dealer assumes only such warranty obligations to Buyer as are set forth on the face of this order or in a separate written instrument, if any. This order is not binding on the dealer until accepted by dealer in writing. I have read the matter printed on the back hereof and agree to it as a part of this order the same as if it were printed above my signature. The front and back of this order comprise the entire agreement pertaining to this purchase and no other agreement of any kind, verbal understanding or promise whatsoever, will be recognized. Receipt of a copy of this order is hereby acknowledged."

On the back of the order appears:

"Dealer Warranty. Dealer warrants to Purchaser (except as hereinafter provided) each part of each Ford Motor Company product sold by Dealer to Purchaser to be free under normal use and service from defects in material and workmanship until such product has been driven, used or operated for a distance of four thousand (4,000) miles or for a period of ninety (90) days from the date of delivery to Purchaser, whichever event first shall occur. Dealer makes no warranty whatsoever with respect to tires or tubes. Dealer's obligation under this warranty is limited to replacement of, at Dealer's location, or credit for, such parts as shall be returned to Dealer with transportation charges prepaid and as shall be acknowledged by Dealer to be defective. This warranty shall not apply to any Ford Motor Company product that has been subject to misuse, negligence or accident, or in which parts not made or supplied by Ford Motor Company are used if, in the sole judgment of Dealer, such use affects its performance, stability or reliability, or which shall have been altered or repaired outside of Dealer's place of business in a manner which, in the sole judgment of Dealer, affects its performance, stability or reliability. This warranty is expressly in lieu of all other warranties, express or implied, and of all other obligations or liabilities on the part of Dealer, except such obligation or liability as Dealer may assume by its Authorized Dealer's Service Policy for the Ford Motor Company Product so sold or by separate written instrument."

The defendant's garage and place of business is in Bismarck. The plaintiff lives at Goodrich, about 80 miles northeast of Bismarck. McClusky is 16 miles west of Goodrich. After purchasing the car on November 18, 1957, the plaintiff started to drive it home. The car stopped, due to battery failure, about 3 miles from McClusky. It would not start. The plaintiff had the car towed into McClusky and the battery charged at a garage. He then drove it on to Goodrich. The next morning the battery was weak and later the car stopped. He telephoned Mr. McCarney, the president of Universal Motor Company. McCarney sent a man to Goodrich with a new part, and the plaintiff, pursuant to instructions, had it put on the car at a local garage. The next day, which was November 20, the car still would not work and plaintiff again called McCarney who told plaintiff to bring the car to Bismarck. On the way to Bismarck the car stopped and was finally

brought to defendant's garage with the assistance of one of defendant's employees. The plaintiff got the car from defendant's garage on the 21st but continued to have trouble with it. After more trouble and complaints by the plaintiff, the Universal Motor Company had the car towed to Bismarck by a wrecker on December 14. On December 16, he had a conversation with McCarney and asked him what was wrong with the motor, "and McCarney says, 'I'll fix it up regardless of what is wrong.' " He gives two versions of a conversation later that day. On cross-examination the plaintiff states:

"I says, 'if there is too much wrong I would like to have a new motor in there.' McCarney says, 'No, we'll fix it up.' "

On redirect examination he gives this version:

"I said to Mr. McCarney, I says, 'Mr. McCarney, if you put in a new motor I will be 100 per cent satisfied.' * * * He said, 'I'll fix it up regardless of what is wrong.' "

The latter conversation was followed by the letter of rescission written by plaintiff's attorneys and on December 23 by the letter to the plaintiff by the defendant's attorneys advising him that the automobile had been repaired pursuant to the warranty and was being held until such time as the plaintiff should see fit to pick it up.

■ The mechanic who repaired the automobile after it had been returned to the garage on December 14 testified that he was an automobile mechanic of 20 year's experience, that he found a defective camshaft and replaced it. He made the repairs incidental to the replacement. All parts that may have been defective as to material, workmanship, improper use, or otherwise, were repaired. When he finished his work the automobile was in good mechanical condition. The service manager of Universal Motor Company testified that he gave the order for the repairs, that

he went out with the car when it was road tested on December 17 after the repair work had been finished, that the repairs were properly made, and the automobile in good operating condition. None of the cost of the repairs were charged to Mr. Knecht. It is clear from the record that the automobile when delivered to the plaintiff did not function properly because of some defective parts, that these parts were repaired or replaced in accordance with the express provisions of the dealer's warranty, and that the provisions of the warranty were complied with by the Universal Motor Company and that none were breached.

We turn next to the plaintiff's contention that he is entitled to rescind the sale because of a breach of implied warranty of fitness. This contention is based on the assertion that Section 51–01–16, NDCC, paragraph 1, provides that:

"Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he is the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for that purpose; "

and that this implied warranty is applicable to the sale of the automobile to him, and that the warranty was breached.

The Universal Motor Company contends that the implied warranty above quoted is inconsistent with the express dealer's warranty and is specifically negatived by this provision in the dealer's warranty:

"This warranty is expressly in lieu of all other warranties, express or implied."

It may also be noted that a similar provision appears on the buyer's order that the plaintiff signed at the time the sale was made. The entire dealer's warranty was also printed on a service policy that was

delivered to the plaintiff with the automobile.

At this point the controlling question with respect to plaintiff's right to rescind is whether the implied warranty of fitness provided by Section 51–01–16, NDCC, was negatived by the disclaimer contained in the buyer's order and the dealer's warranty.

The case of Minneapolis Threshing Machine Company v. Hocking, 54 N.D. 559, 209 N.W. 996, is directly in point. In the third and fourth paragraphs of the Syllabus by the Court it is said that the Uniform Sales Act, of which the statutes here involved are a part,

"is not intended to be a restriction upon the rights of parties to contract; rather it is a statement of the rules applicable in the construction of such contracts as they may make. It does not prohibit the inclusion of any lawful term that the parties may desire in a contract of sale, nor avoid any lawful term or provision that may be thus mutually agreed upon.

"The parties to a written contract of sale may exclude and negative all implied warranties which otherwise would arise and be available under the provisions of the Uniform Sales Act."

The property involved in that case was certain threshing machinery that the defendant Hocking had purchased from the plaintiff pursuant to a written order containing this provision:

"All statutory or implied warranties except as to title are hereby expressly negatived and excluded."

This court determined that the disclaimer contained in the contract to purchase was valid, effective and not against public policy, and said:

"We therefore hold, that the parties to the contract here in question having

by express terms negatived and excluded all implied warranties, the defendant cannot claim the benefit of any such as might have been available had the contract not done so."

In reaching its conclusion, the court cited Section 71 of the Uniform Sales Act, which appears verbatim as Section 51–01–72, NDCC:

"Where any right, duty, or liability would arise under a contract to sell or a sale by implication of law, it may be negatived or varied by express agreement or by the course of dealing between the parties, or by custom, if the custom is such as to bind both parties to the contract or the sale."

As inferring that the implied warranties provided by Section 51–01–16, NDCC, may be negatived by specific agreement, see Minneapolis Steel & Machinery Company v. Casey Land Agency, 51 N.D. 832, 201 N.W. 172; Palaniuk v. Allis-Chalmers Mfg. Co., 57 N.D. 199, 220 N.W. 638; Deere & Webber Company v. Moch, 71 N.D. 649, 3 N.W.2d 471, 139 A.L.R. 1270.

■ We further note that Section 51–01–16, paragraph 6, NDCC, states:

"An express warranty or condition does not negative a warranty or condition implied under this chapter unless inconsistent therewith."

In applying this provision the courts generally hold that an express warranty excludes the implication of any warranty inconsistent therewith but does not exclude implied warranties which are not inconsistent with it. 77 C.J.S. Sales § 316. This rule is entirely consistent with the proposition that under the sales act implied warranties may be expressly excluded by the terms of the contract of sale and that under Section 51–01–72, NDCC, parties to a sale may by contract negative implied warranties provided by Section 51–01–16, NDCC. Authority on this point is abundant. It is generally held that a warranty will not be

implied where the contract stipulates expressly against its existence or declares that no other warranty is made than that provided by the contract. Whayne Supply Company v. Gregory, Ky., 291 S.W.2d 835; Lumbrazo v. Woodruff, 256 N.Y. 92, 175 N.E. 525, 75 A.L.R. 1017; Amos v. Montgomery, Ky., 339 S.W.2d 471. Among the cases stating the same general rule without mentioning the Uniform Sales Act are Hummer v. Carmalt, 54 App.D.C. 157, 295 F. 978, and Hall v. Everett Motors, Inc., 340 Mass. 430, 165 N.E.2d 107. In Stribling Bros. Machinery Company v. Girod Company, 239 Miss. 488, 124 So.2d 289, 292 it is said:

"Where the parties have deliberately contracted in writing, a clause negativing an implied warranty limits the entire agreement to the writing. 46 Am. Jur., Sales, Secs. 333–335, 354. An express warranty excludes the implication of any warranty inconsistent with it. 77 C.J.S. Sales § 316. This is particularly true where the instrument, as here, expressly excludes an implied covenant. Ibid., § 317."

In 43 California Jurisprudence, 2d, Sales, Section 112, in a discussion of implied warranty under the sales act, it is said:

"The statutory implied warranties of quality can be disclaimed by the seller, provided the buyer has knowledge or is chargeable with notice of the disclaimer before the bargain is complete."

See Burr v. Sherwin Williams Co., 42 Cal.2d 682, 268 P.2d 1041.

■■■■ In this case the buyer's written order excluded all warranties, express or implied, other than the dealer's warranty that was printed on the back of the buyer's order. The same warranty also appeared on the service policy furnished to the plaintiff. It stated that it was expressly in lieu of all warranties express or implied. The plaintiff testified that he knew what the dealer's warranty provided. It is clear that at the time the sale was made implied warranties were negated and disclaimed. Under the weight of authority, including prior decisions of this court, such a disclaimer is valid and effective. We are aware of the recent decision in State Farm Mutual Automobile Insurance Company v. Anderson-Weber, Inc., Iowa, 110 N.W.2d 449, and the cases cited therein that seem to take the view that such a disclaimer of implied warranty is against public policy. However, in Minneapolis Threshing Machine Company v. Hocking, 54 N.D. 559, 209 N.W. 996, this court held that a disclaimer of implied warranty similar to the one here involved was not against public policy. We are not constrained to overrule that decision which has been the law of this state for more than 42 years without legislative change and accords with the rule in the majority of jurisdictions. The trial court erred in determining that the Universal Motor Company did not comply with the express dealer's warranty and that it was bound by an implied warranty of fitness under Section 51-01-16, paragraph 1, ND CC. The judgment is reversed.

BURKE and TEIGEN, JJ., and EMIL A. GIESE, District Judge, concur.

Mr. Justice STRUTZ being disqualified did not participate; Honorable EMIL A. GIESE, Judge of the Sixth Judicial District, sitting in his stead.

SATHRE, Chief Justice (dissenting).

I regret that I am unable to agree with the result arrived at in the majority opinion.

The facts in the case, as established by the record, are substantially as follows:

On November 19, 1957, the plaintiff bought a new 1958 Ford automobile from the defendant and made a cash down payment of $1,250. In addition to this payment, the plaintiff turned in, as part-payment of the purchase price, his 1953 Ford for which the defendant allowed $1,312.

The defendant furnished the plaintiff with the usual dealer's 1,000- and 2,000-mile inspection coupons and the usual dealer's warranty by which the defendant, as dealer and seller, warranted the automobile in each part to be free from defects in material and workmanship for ninety days, with normal use. At the time of the sale of the car, the plaintiff was assured by the defendant that this car would give him "the best service on the road." Prior to and at the time of the sale of the car in question to the plaintiff, the defendant had advertised this model car extensively in the newspapers. These advertisements announced that the new Ford car had been "Proved and Approved" around the world. One of these ads, which appeared in "The Bismarck Tribune" with the name of the defendant and which is an exhibit in this case, said, among other things: "Here's a car * * * so *rugged* it proved its mettle in a road test around the entire world! Ford's new Interceptor V-8 engine took the mighty Himalayas and our own rugged Rockies without a puff." The plaintiff took the car and started for home, but the car stopped before he got home and he was unable to start it. The car was towed into McClusky. The plaintiff made a telephone call to the Universal Motor Company and advised Mr. McCarney, the manager, of the situation. At the garage in McClusky the battery was charged and the plaintiff was able to get the car to his home in Goodrich, North Dakota. The next morning, he again had trouble in starting the car and called Mr. McCarney. McCarney told him to bring the car to Bismarck. Plaintiff then got the car started and drove a short distance when the motor stopped again, whereupon he again called Mr. McCarney of the motor company. That evening, a representative of the defendant corporation brought a part for the engine and told the plaintiff to get someone to install it, as he did not have time to do it. The following day, November 28, 1957, the car still wouldn't work and plaintiff called Mr. McCarney again. McCarney advised him to bring the car to Bismarck. Plaintiff, in attempting to drive the car to

Bismarck, drove as far as Wilton, about twenty-five miles from Bismarck, when the car again stalled. After another call to Mr. McCarney, an employee was sent out with a wrecker for the purpose of towing the car to Bismarck. The car was repaired in Bismarck, but it still did not work properly. The engine always missed and the car vibrated. There was a loud knock in the motor. The plaintiff had trouble with the car every time he used it. After several more telephone calls by the plaintiff, the Universal Motor Company sent a wrecker and took the car to the garage in Bismarck.

On December 15, the plaintiff Knecht asked the defendant company to install a new motor, but it refused to do so. The plaintiff was told that "we will fix it up regardless of what is wrong." On the same day, while the car was in defendant's possession, the plaintiff served upon defendant notice of rescission of the contract of purchase and demanded a refund of the purchase price. Plaintiff thereupon brought action for rescission of the sale of the automobile and for a refund of the amount he paid of the purchase price.

The defendant Universal Motor Company answered, alleging that the sale was made pursuant to the express warranty in writing by which the defendant's obligation was especially limited "to replacement without charge to the purchaser of such parts as shall be returned to the dealer and shall be acknowledged by the dealer to be defective," and that the defendant Universal Motor Company did fully replace and repair any and all defects in said automobile in accordance with their warranty. The case was tried to the court without a jury, and judgment was entered in favor of the plaintiff. The defendant has appealed from this judgment and demands a trial de novo.

It is the contention of the plaintiff that there was a breach of warranty of quality and fitness which the law implies and that the same is sufficient ground for rescission of contract of sale and for recovery of the purchase price paid by plaintiff.

The defendant, however, contends that the specific express warranty controls, and that the plaintiff is bound thereby.

Section 51–01–16 of the North Dakota Century Code is as follows:

"Subject to the provisions of this chapter and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"1. Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he is the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for that purpose; * * *."

The majority opinion cites the case of Minneapolis Threshing Mach. Co. v. Hocking, 54 N.D. 559, 209 N.W. 996, 1001, as controlling in the instant case. The facts in that case, as I read them, do not parallel the facts in the instant case. That case involved the purchase and sale of a threshing machine. Hocking purchased the threshing machine just before the 1921 threshing season. After finishing threshing, Hocking, the defendant in that case, paid the installment due at that time and then stored the machine until the threshing season of 1922. After the threshing season of 1922, he told the agent of the machine company that he would return the machinery, giving as a reason that it did not work properly and did not save the grain. He had complained to the agent, and experts were sent out to make proper adjustment of the working parts of the machine. As pointed out, he used the threshing machinery to thresh his grain in 1921, and then stored it and used it to thresh his grain in the fall of 1922. After using the machinery for two successive threshing seasons and making the payments due, and more than a

year after he bought the machinery, he attempted to rescind the sale. I quote from the opinion: "It is true that he had some correspondence relating to certain pulleys on the separator, but nothing was said by the defendant therein [the purchaser] from which Wood [the agent] could infer that the machine was unsatisfactory or that the defendant wanted to rescind. Quite the contrary was the case."

The facts in the instant case are wholly different. The car involved here stopped and could not be started by the plaintiff when he first drove it out of defendant's garage. It stopped eighteen miles from his home; in fact, he never was able to complete a single trip in it without having it repaired or towed to a garage for repairs. When plaintiff returned the car, the speedometer had registered 1,280 miles and more than half of that mileage had been made by towing the car to garages for repair.

The defendant relies on the written warranty, set out in the majority opinion, which provides that it is in lieu of all warranties, express or implied, and contitutes a contract between the parties.

I cannot subscribe to the theory that the express warranty relied on by defendant has the effect of overriding subsection 6 of Section 51–01–16, North Dakota Century Code, which is as follows:

"6. An express warranty or condition does not negative a warranty or condition implied under this chapter unless inconsistent therewith."

When the plaintiff drove the automobile away from defendant's garage, he of course expected that it would perform properly, and it certainly cannot legitimately be held that such expectation on the part of the plaintiff was inconsistent with the dealer's warranty. The purpose of the plaintiff in purchasing the automobile was to use it and drive it on the highways—not to have it towed repeatedly to garages for repair.

In the case of Cretors v. Troyer, 63 N.D. 231, 247 N.W. 558, 559, this court held

under Section 6002a15, 1925 Supp. (Sec. 15 Uniform Sales Act) now Section 51-01-16 NDCC.

"Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies upon the seller's skill or judgment (whether he be grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for that purpose."

In the case of State Farm Mutual Auto Ins. Co. v. Anderson-Weber, Inc., Iowa, 110 N.W.2d 449, the Supreme Court of the State of Iowa had under consideration issues practically identical with the issues in the instant case. One Lester J. Bahl purchased from the defendant Anderson-Weber Inc. a new Mercury automobile which was delivered to him on December 29, 1956. The purchase of the car was accompanied by a signed order of the purchaser, on a form prepared by the local dealer, describing the car and the conditions incident to the purchase. On the back there is a so called manufacturer's warranty. Paragraph 7, as it appears on the back of the order provides as follows:

"It is expressly agreed that there are no warranties, express or implied, made by either the dealer or the manufacturer on the motor vehicle, chassis or parts furnished hereunder except as follows: * * *."

Then follows the manufacturer's warranty which is identical with the manufacturer's warranty in the instant case.

It appears from the facts in the case that on January 8, 1957, the speedometer having registered 305 to 306 miles, while Bahl was driving 30 to 35 miles per hour going up a slight incline, there was a flash of flame against the windshield. The driver pulled over to the side of the road and jumped from the car. The car rolled 100 to 150 feet and stopped in a ditch, and for all practical purposes the car was destroyed.

The plaintiff, Bahl, and the insurance company brought action against the dealer and manufacturer for breach of warranty. The case was tried to the court and a jury, and testimony was adduced by both parties.

At the close of plaintiff's testimony, and again at the close of all the evidence each defendant moved for a directed verdict on several grounds. The trial court sustained both motions on all grounds urged.

The Supreme Court of Iowa reversed the decision of the trial court. In its opinion the court cited with approval several cases from Iowa, New Jersey, Pennsylvania and Tennessee to the effect that implied warranties are applicable in cases of this nature.

In a more recent case, Appleman v. Fabert Motors, Inc., 30 Ill.App.2d 424, 174 N.E.2d 892, 896 it is stated:

"The purchaser of a new automobile has the reasonable right to expect an automobile completely new in every respect and part, properly constructed and regulated, to provide safe, trouble free and dependable transportation."

The undisputed facts in the instant case show that the plaintiff had trouble with the car every time he attempted to drive it. It stopped and he had to have it towed to a garage, or otherwise have it repaired. The defendant, Universal, finally told the plaintiff to bring the car to Bismarck, and he attempted to do so, but it stalled and it was towed to Bismarck by a wrecker. Plaintiff then requested defendant to put a new motor in the car but the request was refused. Defendant stated, however that "we will fix it up whatever is wrong" or words to that effect. Plaintiff, however had become dissatisfied with the situation and the several "fix it ups" that had failed and left the car with the defendant and brought this action for rescission of the sale. I cannot agree that the implied warranty of quality and fitness by the seller under Section 51-01-16, C.C. was waived by the plaintiff when he signed the order and the waiver contained therein.

Plaintiff, the purchaser, when he signed the purchase order, relied on, and had a right to rely on, the seller's representations and statements as to the qualities and fitness of the car for the purpose for which it was purchased. Cretors v. Troyer, supra.

The order of purchase of the car is the language of the seller, and in case of any question as to its meaning it should be given the construction most favorable to the buyer. When the buyer signed the purchase order it cannot be assumed that he thereby waived the implied warranty that the car was reasonably fit for the purpose for which it was intended to be used.

I would affirm the judgment of the District Court.