Ernest R. LANG, Plaintiff and Appellant,

v.

GENERAL MOTORS CORPORATION, Defendant and Respondent.

No. 8146.

Supreme Court of North Dakota.

Aug. 31, 1965.

Rausch & Chapman, Bismarck, for plaintiff and appellant.

Cox, Pearce, Engebretson, Murray & Anderson, Bismarck, for defendant and respondent.

STRUTZ, Judge.

This is an appeal from a summary judgment entered in favor of the defendant, General Motors Corporation, for a dismissal of the plaintiff's complaint.

The action was brought to recover damages which the plaintiff alleges he sustained

when he purchased a new 1960 Chevrolet 2½-ton truck-tractor, manufactured and distributed by the defendant corporation. The truck was purchased from one of the defendant's dealers, the Jay Kline Chevrolet Company, of Minneapolis, Minnesota. The plaintiff claims that the equipment which he purchased was defective because of negligent manufacture, construction, and assembly, all of which had been done at the defendant's plant, and that the vehicle was not reasonably fit for the purposes for which it was purchased. Thus the plaintiff's complaint alleges negligence of the defendant in the manufacture, construction, and assembly of the vehicle purchased, and further alleges breach of warranty in that the truck was not reasonably fit for the purposes for which it was purchased.

The trial court granted the defendant's motion for summary judgment, ordering that judgment be entered dismissing the plaintiff's complaint. From this judgment the plaintiff has appealed to this court, demanding a trial de novo.

■ The trial court having granted a motion for summary judgment, we must determine whether the pleadings and the showing made by the parties raise any genuine issue of fact to be tried by the court. If no material issue of fact is raised by the pleadings and the showing of the parties, the court may properly grant a motion for summary judgment. Rule 56(c), N.D.R. Civ.P.; Temme v. Traxel (N.D.), 102 N. W. 2d 1; Heasley v. State (N.D.), 115 N.W.2d 334; Mondy v. Gjesdal (N.D.), 123 N.W. 2d 33.

The plaintiff in his complaint alleges, in substance, that on June 2, 1961, he purchased a new 1960 2½-ton truck-tractor which had been manufactured and assembled at the defendant's plant. This equipment was purchased from one of the defendant's retail dealers, the Jay Kline Chevrolet Company of Minneapolis. The plaintiff's complaint alleges that the vehicle could not be operated safely on the highway; that it would wobble and shimmy as it was being driven on the road, and that this condition was due to the negligent manufacture, construction, and assembly by the defendant; and that the plaintiff made repeated complaints to the defendant and its agents and spent large sums of money trying to correct the defects in the vehicle caused by such negligent and defective manufacture and assembly. The plaintiff further alleges that he purchased the truck-tractor believing it to be reasonably suitable for purposes of trucking and hauling, and that it was not reasonably fit for such purposes.

The defendant, in its answer, generally denies all of the allegations of plaintiff's complaint, and alleges that the vehicle described in the complaint was sold to the plaintiff by the Kline Chevrolet Company, of Minneapolis; that the seller is a separate corporation, engaged in the business of selling the defendant's products; that there were no dealings between the plaintiff and the defendant and no privity of contract between them, and that no implied warranties to the plaintiff could arise from the plaintiff's purchase of such vehicle from a third party. The defendant cites the decision of this court in Knecht v. Universal Motor Co., 113 N.W.2d 688, as holding that a general warranty given in lieu of all other warranties, express or implied, negatives implied warranties which ordinarily would arise under the Uniform Sales Act.

The decision in Knecht is not applicable to the facts of this case. Any possible disclaimer of liability, even under the ruling in Knecht, under no circumstances would be binding on the plaintiff unless he agreed thereto. There is nothing in this record to show what, if anything, the plaintiff agreed to when he purchased the truck-tractor described in the complaint. Whether there was a waiver by the plaintiff would be a matter of defense, which cannot be decided on a motion for summary judgment.

The only issue to be determined on this appeal, therefore, is the issue of privity of contract. The defendant, in its answer,

alleges that plaintiff purchased the truck-tractor from an independent dealer, and that there was no privity of contract between plaintiff and defendant. If lack of privity is a defense to plaintiff's action, plaintiff's complaint clearly fails to state a cause of action and the court properly granted defendant's motion for summary judgment dismissing plaintiff's complaint.

Prior to the decision in MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696, the courts generally held that a remote buyer of personal property could not recover from the manufacturer where such property was purchased from an independent dealer and where the buyer had no direct dealings with the manufacturer. Following MacPherson, however, there has been a trend in the decisions toward allowing a remote buyer to recover directly from the manufacturer for breach of warranty, in spite of the fact that there is a lack of privity of contract, in cases where the manufacturer has produced and put on the market a defective product, to the damage of the ultimate purchaser. At first, the rule that a warranty runs from the manufacturer to the ultimate consumer, even in the absence of privity of contract, was applied only in cases involving food and drink. Simmons v. Wichita Coca-Cola Bottling Co., 181 Kan. 35, 309 P.2d 633; Jacob E. Decker & Sons, Inc. v. Capps, 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479; Swift & Co. v. Wells, 201 Va. 213, 110 S.E.2d 203. Somewhat later, the privity rule was further relaxed in cosmetic cases. Rogers v. Toni Home Permanent Co., 167 Ohio St. 244, 147 N.E.2d 612, 75 A.L.R.2d 103. And, still later, the privity rule was relaxed in cases involving dangerous products. Pritchard v. Liggett & Myers Tobacco Co., 295 F.2d 292 (3d Cir. 1961); Markovich v. McKesson & Robbins, Inc., 106 Ohio App. 265, 149 N.E.2d 181.

In recent years, in almost every case in which the outmoded privity rule has been pleaded and relied upon, the courts have realized that in modern business dealings the vast majority of transactions no longer involve simply a buyer and a seller, but that such dealings have become complicated and involve, in addition to buyer and seller, the manufacturer who conducts a vast advertising program aimed directly at the ultimate purchaser. As a result of modern business practices, a remote consumer in some out-of-the-way place is induced to buy the manufacturer's product by a far-flung advertising program of the manufacturer, such buyer relying on the advertised representations made by the manufacturer. As a consequence, courts in recent decisions have largely abandoned the strict privity rule, even in non-food-and-drink cases.

In Randy Knitwear, Inc. v. American Cyanamid Co., 11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399, the New York Court of Appeals upheld an order denying a summary judgment in a case brought by a remote purchaser against a manufacturer of resin, where the manufacturer had conducted a widespread advertising campaign extolling the unshrinkable character of fabrics finished through the use of the manufacturer's process. The New York court held that claims that fabrics treated with defendant's resin would not shrink raised substantial fact issues precluding summary judgment for the manufacturer, notwithstanding the total lack of privity of contract between the resin manufacturer and the garment manufacturer who used the resin.

There is a line of decisions that limits recovery by a remote buyer from the manufacturer to suits for personal injuries resulting from the manufacturer's breach of warranty or negligence. Marino v. Maytag Atlantic Co., Mun.Ct., 141 N.Y.S.2d 432; Trans World Airlines v. Curtiss-Wright Corp., 1 Misc.2d 477, 148 N.Y.S.2d 284. We believe, however, that the reasoning of the majority opinion of the Michigan Supreme Court in the case of Spence v. Three Rivers Builders & Masonry Supply, Inc., 353 Mich. 120, 90 N.W.2d 873, decided in 1958, is more sound. In the Spence case the Michigan court, in discussing the priv-

ity rule, quoted with approval from the decision of the Massachusetts court in Carter v. Yardley & Co., 319 Mass. 92, 64 N.E.2d 693, at 700, 164 A.L.R. 559, as follows:

> "The time has come for us to recognize that that asserted general rule no longer exists. In principle it was unsound. It tended to produce unjust results. It has been abandoned by the great weight of authority elsewhere. We now abandon it in this Commonwealth."

Thus a number of recent decisions hold that a person who buys from a retailer may, nevertheless, recover from the manufacturer for damages caused by the manufacturer's negligence even if the buyer is a remote buyer with whom the manufacturer has had no direct contractual relations. And recovery is not limited to damages for personal injuries.

In the case of Spence v. Three Rivers Builders & Masonry Supply, Inc., supra, the plaintiff, who was a buyer of certain building blocks, brought an action against the manufacturer of the blocks for damages, breach of express warranty as to fitness of the blocks for building purposes, and breach of implied warranty that the blocks were of merchantable quality. The trial court entered judgment for the manufacturer, and the plaintiff appealed. The Supreme Court of Michigan reversed the trial court's decision, saying that the trial court—

> "* * * should have permitted recovery either on a theory of negligence or implied warranty and should also have proceeded to take such further proof on plaintiff's damages as may have been necessary."

In the Spence case, the ultimate consumer had no dealings with the manufacturer but had purchased through a third party. The court stated:

> "* * * we do not hesitate to hold (the issue of privity aside) that in

these circumstances and in this day and age appearance as well as structural safety and durability is an important factor in determining the merchantable quality and fitness of these particular products as used in this case. * * *

> * * * * * *

> "As the court below correctly observed, there is little doubt that in the past our Court has for the most part devotedly followed the 'general rule' and been reluctant to permit a third person 'not in privity' to recover from a manufacturer on a theory of negligence or implied warranty. And it has correspondingly been reluctant to extend recovery—beyond what may loosely be termed 'food' cases involving personal injuries—to other defective products, regardless of whether they involved personal injuries or injuries to property."

The court then proceeded to state that lack of privity should not be a defense in any case or it should be a defense in all cases, without making any exception in the so-called food cases. It goes on to say:

> "Either lack of privity should always be a defense in these cases, or it never should be. The basically contractual notion of privity in this context has largely to do with the right of a party to bring his action against the person he seeks to hold, regardless of injury suffered. The tort idea of care or the lack of it has nothing whatever to do with *that* subject, though it may indeed have a lot to do with recovery."

It is perfectly clear, therefore, that where a sale is made under a trade name and where the manufacturer has conducted a national advertising campaign and sales are accomplished through local dealers, the demand for such products is created by the advertising of the manufacturer. The purpose of the advertising conducted by such manufacturer is to cultivate the ultimate consumer. Thus, where the article sold as a new article is defectively manufactured,

**810**

the interests of the ultimate consumers can be protected only by eliminating the requirement of privity between the manufacturer and his dealers and the expected ultimate consumer. It would be unreasonable to hold that, if a buyer purchases, for example, a "Ford" or "Chevrolet" or "Cadillac" or "Chrysler" or any other make of automobile, no implied warranty of merchantable quality can be asserted by the purchaser against the manufacturer even though the particular car delivered as a new automobile is in such bad condition and so defective in materials or construction that it cannot be operated at all and is wholly useless or unsatisfactory for the ordinary purposes which such automobile is designed to serve.

■■ Accordingly, under modern marketing conditions, when a manufacturer puts a new truck-tractor or other new product into the stream of trade and promotes its sale to the public, an implied warranty that it is reasonably fit and suitable for use, as such, accompanies such new vehicle into the hands of the ultimate buyer. Absence of privity between the manufacturer and the buyer is immaterial.

■ In the case before us, it appears from the record that there was a lack of due care in the manufacture of the truck-tractor. For reasons stated herein, we hold that the complaint of the plaintiff in this case does state a cause of action, on either the theory of negligence or implied warranty. The order granting summary judgment is set aside, and the case is remanded for further proceedings consistent with this opinion.

BURKE, C. J., and TEIGEN and ERICKSTAD, JJ., concur.

KNUDSON, J., not being a member of the Court at the time of submission of this case, did not participate.