227 So.2d 246 (1969)
FORD MOTOR COMPANY, a Foreign Corporation, Appellant,
v.
Howard E. PITTMAN, Appellee.
No. K-480.
District Court of Appeal of Florida. First District.
October 2, 1969.
Rehearing Denied November 7, 1969.
*247 W.K. Whitfield and Horne, Rhodes & Lamb, Tallahassee, for appellant.
Hall, Hartwell, Hall & Canada, Tallahassee, for appellee.
RAWLS, Judge.
Appellee-plaintiff Howard E. Pittman was of the opinion that appellant-defendant Ford Motor Company did not have a "better idea" and thus instituted this action which was submitted to the jury on two issues: 1. Breach of implied warranty of merchantability of fitness, and 2. Negligence in the fabrication of a new 1967 Ford Galaxie automobile.
Ford Motor Company now appeals a final judgment rendered on a jury verdict in favor of plaintiff Pittman, and poses two points:
1. Does the Uniform Commercial Code (Section 672.2-316, Florida Statutes, F.S.A.) permit a manufacturer of automobiles to exclude implied warranties of merchantability and fitness by a written disclaimer?
2. In a suit by a purchaser of an automobile against the manufacturer based upon negligence where the automobile has been in the exclusive possession and control of the purchaser for more than three weeks prior to a loss, would the doctrine of res ipsa loquitur be applicable?
Pittman purchased a new Ford Galaxie automobile from Perry Ford Company on February 28, 1967. On the night of March 13, 1967, Pittman drove the Galaxie home from his place of business, parked it in the yard about 30 feet from his kitchen door, and went to bed. Around midnight Pittman was awakened by the barking of his dog, went to the kitchen door, and saw smoke coming from his car. He stated: "The starter was turning wide open like you're trying to crank a car and it won't crank." When he opened one of the doors, the Galaxie burst into flames which arose from under the dash and hood. After the fire was extinguished, examination of the automobile disclosed that the hood forward of the radio antenna and in front of the windshield wiper had been subjected to intense heat. The automobile had been driven less than 400 miles. Pittman had returned the automobile to the dealer the day after the purchase because the right front light would not burn. In addition, he returned it on two other occasions during the three-week period to repair a leak around a window and to eliminate a roar *248 in the drive train. Mrs. Pittman's mother had observed a "burning odor" emitting from the automobile.
The expert evidence was sufficient for the jury to have found that the cause of the fire was due to a defective electrical wiring system.
Appellant affirmatively pleaded that its written warranty disclaimed any implied warranty. It strenuously urges that the Uniform Commercial Code[1] permits a manufacturer of automobiles to exclude implied warranties of merchantability and fitness by a written disclaimer. Appellee Pittman's brief states: "Appellee admits that the Uniform Commercial Code is applicable to this transaction and that the wording of this particular written warranty is legally sufficient under the Code to exclude any implied warranty of fitness or merchantability." We hesitate to agree.
In this era of mass merchandising the legal machinery has jetted into the field of products liability. From the time of Judge Cardozo's enunciation on the subject in MacPherson v. Buick Motor Company[2] products liability law has evolved into a fertile field of litigation upon the judicially-inspired theory of "implied" warranties, liberal construction of "express" warranties, and relaxation of the rigid evidentiary rules in proving negligence under the theory of res ipsa loquitur. Florida has been a member of the advance patrol in scanning this developing area of the law. In 1918 our Supreme Court held in Berger v. E. Berger & Company[3] that an implied warranty was applicable to a lumber transaction. Matthews v. Lawnlite Company[4] held that a manufacturer could be found liable for the negligent design and fabrication of a metal lawn chair. In Continental Copper & Steel Industries, Inc. v. E.C. "Red" Cornelius, Inc.[5] the Third District Court of Appeal affirmed a judgment rendered upon an implied warranty that electric cable would be reasonably fit for the purpose intended. This Court in Smith v. Platt Motors, Inc.[6] reversed the dismissal of a complaint against Ford Motor Company predicated upon the theory of an implied warranty as to fitness, and held that a cause of action was well founded against the manufacturer but not as to its dealer-agent Platt. The Third District Court of Appeal reviewed a summary final judgment rendered in favor of defendant Douglas Aircraft Company, Inc. in King v. Douglas Aircraft Company,[7] wherein plaintiffs alleged negligence and breach of an implied warranty as to merchantability and fitness for the use intended against the manufacturers. The appellate court reversed the summary judgment holding that the facts as alleged, if proven to the satisfaction of a jury, would impose liability on the part of Douglas Aircraft under the negligence and implied warranty theories.
In the recent decision of Manheim v. Ford Motor Company[8] our Supreme Court again reviewed the implied warranty doctrine. There, the Third District Court of Appeal sustained the entry by the trial court of a summary judgment in favor of *249 Ford Motor Company. Apparently, the summary judgment was predicated primarily upon the following disclaimer, viz.:
"`This warranty is expressly in lieu of any other express or implied warranty, including any implied warranty of merchantability or fitness, and of any other obligation on the part of the Company, except such obligation as the Company may have assumed in its warranty and Policy manual or other separate written agreement.'"
The Supreme Court, after reviewing the leading Florida decisions upon the implied warranty doctrine, held basically that Florida recognizes the following rules of law upon the subject: 1. An action may be brought against a manufacturer notwithstanding want of privity. 2. Execution of a written warranty by the manufacturer will not preclude recovery on the basis of implied warranty of the product.[9] Thus, Florida's court of last resort as late as the year 1967 swept aside many of the arguments presented in this cause as to the inapplicability of the implied warranty doctrine.
So, we reach the real question here presented: Did enactment of the Uniform Commercial Code in 1965 sweep away in one stroke of the legislative broom the jurisprudence of this State pertaining to the doctrine of implied warranty? Apparently, from their briefs and arguments, both parties to this appeal are of this view. Although we are somewhat fearful to tread upon such noncontroversial ground, we are equally fearful of casting into the trash can of legislative unforseeability some fifty years of this State's jurisprudence upon a critical subject of paramount importance to the citizens of this State. And, unless the legislature has in unequivocal terms spelled out to the courts of this State that it has by the enactment of the omnibus Uniform Commercial Code severed the implied warranty doctrine from the jurisprudence of this State, we will not be the operator of the guillotine.
Generally, a manufacturer of stock items is not the "seller" to the ultimate consumer under the terms of the Uniform Commercial Code. Section 672.2-106(1) states, "A `sale' consists in the passing of title from the seller to the buyer for a price * * *." Section 672.2-103 defines a "seller" as "a person who sells or contracts to sell goods." Ford Motor Company's contention here is that this "sale" is one within the terms of the Uniform Commercial Code. It alleged that the Perry Ford Company is its agent for the purpose of making the sale. To sustain its theory it must show that its agent, on its behalf, entered into a contract with the plaintiff-appellee, and the terms of this contract contained an exclusionary clause expressly negating an implied warranty. To be successful in its defense the burden of proof is upon Ford Motor Company to affirmatively show that it is in truth and in fact a "seller" within the terms of the Uniform Commercial Code. Furthermore, it must prove a contract of the type required by § 672.2-201, and it must prove that the disclaimer clause was in fact a part of that contract, rather than some extraneous matter hidden in a bulk of materials handed to the buyer at the time of purchase.[10] The actual proofs reflect no such contract. C.J. Fellrath, secretary to Ford Motor Company, in his answers to supplemental interrogatories stated that Ford "neither sells nor services vehicles to the ultimate retail purchaser * * * [it] sells vehicles to authorized dealerships and said dealers sell and service [purchasers]."
Without determining the question of whether the disclaimer of the implied warranty *250 on an expensive, complicated, dangerous instrumentality capable of effecting human injury or death and designed to be purchased and used by persons lacking knowledge in mechanics is an unconscionable provision in a contract for sale,[11] we find that the trial judge was correct in holding as a matter of law that Ford Motor Company was not the "seller" within the terms of the Uniform Commercial Code, and so it could not extinguish its implied warranty in the manner here attempted.
The appellant in its brief concedes that the trial court did not charge the jury under the doctrine of res ipsa loquitur. It urges that plaintiff did not adduce adequate proof of negligence to submit this question to the jury and that under these circumstances in the absence of applying the doctrine of res ipsa loquitur, the jury should not have had the question of negligence submitted to it. Appellant's principal argument in support of this point is that plaintiff failed to point out the particular defective part that initiated the fire in the subject automobile, and in the absence of some competent evidence as to direct proof of causation, the question of negligence could not be submitted to the jury. We do not agree. Here, competent and substantial material evidence of a circumstantial nature was presented by which a jury sitting as reasonable men could well have concluded that the manufacturer was negligent in the manufacture of the electrical system of this automobile or that its agent-dealer was negligent in carrying out the predelivery inspection, the purpose of which was to prevent a defective automobile from being placed into the hands of the ultimate purchaser. Such evidentiary matter was as follows: Ford Motor Company relies upon the dealer to make a predelivery service check on their finished product. The Ford predelivery check list states that with the engine operating and hot the alternator and voltage regulator, the rotor air gap, primary circuit resistor, coil condition, high-tension wire condition, etc. are to be checked with an oscilloscope and/or meter. The predelivery check was made by Perry Ford Company's mechanic, Simmons, who testified he did not check the rotor air gap (part of the distributor), did not check the coil condition except to determine that it was tight and secure, did not check the spark plugs or high-tension wire condition except to determine that they were connected, and did not put the "machine" on the alternator and voltage regulator. The mechanic's testimony was to the effect that he only partially checked this car.[12]
Pittman introduced testimony by an expert who had 19 years' experience with American Airlines as a mechanic for aircraft and automobiles, and 3 years' experience as a mechanic instructor for Lively Vocational School. This witness, after examining twelve photographs of the burned automobile and after reading depositions given by Mr. and Mrs. Pittman, testified that the battery and electrical wiring began on the right side of the automobile; a short in the electrical system could cause the starter to turn over without someone activating the key; that in his opinion the fire was caused by a malfunction in the electrical system; that if someone wanted to burn the car he could start a fire much easier in other places; and that the fire could have been the result of a malfunctioning cigarette lighter, headlight switch, or stoplight switch.
It is our conclusion that the evidence adduced at the trial, if believed by the jury, was competent to support the finding and verdict that this new Ford automobile, *251 which had been driven less than 400 miles by the purchaser, was not fit for the purpose intended or was either negligently manufactured by Ford Motor Company or negligently inspected by its agent-dealer.
The appellant has failed to demonstrate error. The judgment of the lower court is hereby
Affirmed.
JOHNSON, Chief Judge, and SPECTOR, J., concur.
NOTES
[1] Section 672.2-316, Florida Statutes, F.S.A. (Uniform Commercial Code  Sales), 1965.
[2] MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696 (1916).
[3] Berger v. E. Berger & Co., 76 Fla. 503, 80 So. 296 (Fla. 1918); see also Hoskins v. Jackson Grain Co., 63 So.2d 514 (Fla. 1953).
[4] Matthews v. Lawnlite Company, 88 So.2d 299 (Fla. 1956).
[5] Continental Copper & Steel Industries, Inc. v. E.C. "Red" Cornelius, Inc., 104 So.2d 40 (Fla.App.3d 1958).
[6] Smith v. Platt Motors, Inc., 137 So.2d 239 (Fla.App.1st 1962); see also Hardee v. Gordon Thompson Chevrolet, Inc., 154 So.2d 174 (Fla.App.1st 1963).
[7] King v. Douglas Aircraft Co., 159 So.2d 108 (Fla.App.3d 1963).
[8] Manheim v. Ford Motor Company, 201 So.2d 440, 441 (Fla. 1967).
[9] Sperry Rand Corporation v. Industrial Supply Corporation, 337 F.2d 363 (5th Cir.1964).
[10] Counsel for Ford argued to the Court that the warranty was in a "little book" handed to the purchaser. See F.S. § 672.2-202, F.S.A., relative to parole or extrinsic evidence.
[11] See F.S. § 672.2-302 and § 672.2-316(1), F.S.A., to the effect that negation and limitation of warranties are inoperative to the extent that such construction is unreasonable.
[12] We note that the trial judge had before him Simmons' deposition wherein he deposed that if the starter, not activated by a person, suddenly started turning over, such condition would indicate bad wiring.