Luther C. HAUGEN and American Family
Insurance Company, Plaintiffs/Ap-
pellants,

v.

The FORD MOTOR COMPANY, a corpo-
ration, Defendant/Appellee.

Civ. No. 8945.

Supreme Court of North Dakota.

June 4, 1974.

Bjella & Jestrab, Williston, for plaintiffs/appellants.

Fred A. McKennett, Williston, for defendant/appellee.

TEIGEN, Judge.

This is an appeal from a summary judgment entered in favor of the defendant, Ford Motor Company (hereinafter Ford), for a dismissal of plaintiffs' complaint.

The action was brought to recover damages by Luther C. Haugen and American Family Insurance Company, being the auto purchaser and subrogated insurance carrier (hereinafter Haugen), against Ford, the manufacturer, predicated upon breach of express warranty or implied warranty, or negligence, or the theory of strict liability.

The plaintiff Haugen purchased a new 1970 Lincoln Continental automobile, manufactured and delivered by Ford to Stockman Motor, Inc., a Ford dealer at Williston, North Dakota, for retail sale. The Lincoln was purchased by Haugen on April 3, 1970, from Stockman Motor, Inc., and, approximately five months later, on September 11, 1970, the Lincoln was destroyed by fire as Haugen and his wife were returning to their farm home in McKenzie County from a shopping trip to

Sidney, Montana. The Lincoln had been driven approximately 8,000 miles at the time it was destroyed by fire. The insurance company paid its insurance under the fire insurance policy and, to that extent, it was subrogated to its insured's claim.

When the Lincoln was delivered to Haugen on April 3, 1970, there was no discussion as to the form or content of either implied or express warranty. Mr. Haugen did not sign a purchase order or any instrument in connection with the purchase, except his personal check in full payment for the new automobile after credit had been allowed for a trade-in. According to the proofs it appears that Haugen knew that the automobile was warranted and that he received a statement of the warranty at the time he took delivery of the automobile, but no proofs were submitted that he knew the contents of the warranty or that it contained a disclaimer.

Haugen did, however, return the Lincoln on several occasions to Stockman Motor, Inc., for the repair of some minor defects. In his affidavits, filed in the summary judgment proceeding, he averred that he had complained to Stockman Motor, Inc., on several occasions that the engine did not idle properly and that it would stop on acceleration. He also averred that on one occasion he took the automobile to another Ford dealer, located in Minot, North Dakota, with a similar complaint, and that they made some adjustments on the carburetor. He maintains that the Lincoln was not operating properly on the trip to Sidney, Montana, and that as he and his wife were returning to their home in McKenzie County and while he was driving about ten miles per hour on a short stretch of muddy road which was under construction, he and his wife suddenly saw fire coming from both sides of the car just behind the front wheels. Mrs. Haugen jumped out of the car before it stopped; Mr. Haugen stopped the car and then got out. The Lincoln was completely consumed by the flames before either of them had a chance to remove clothing and other personal effects from the automobile.

The trial court granted Ford's motion for summary judgment, ordering that judgment be entered dismissing Haugen's complaint and also dismissing Haugen's motion for summary judgment. From this judgment, Haugen has appealed to this court.

On the basis of the facts adduced at the summary judgment proceeding, the trial court found that there was no material issue of fact. Based upon the material facts, the court concluded:

"A. That at the time of sale plaintiff Haugen admittedly received the Basic Warranty and Limitation of Liability and was then aware of its existence and charged with knowledge of its contents.

"B. That the sale by Stockman Motor, Inc. brought Stockman Motor, Inc. within the provision of the Uniform Commercial Code. [Stockman Motor, Inc. is not a party to the action.]

"C. That Ford Motor Company, a corporation, was not a party to the sale to Haugen and not subject to the Uniform Commercial Code.

"D. That Ford Motor Company as manufacturer had limited its liability by excluding loss by fire except for responsibility for personal injuries by the Basic Warranty and Limitation of Liability and it had a right to do so.

"E. That the Basic Warranty and Limitation of Liability by Ford, the manufacturer, and Stockman, the dealer, and admittedly received by Haugen excluding loss by fire, except for responsibility for personal injuries, was not against public policy or unconscionable."

It appears from the proofs submitted by Haugen that at trial he premised his

claim for damages on the theory that the fire was caused by gasoline leaking from or near the rubber fuel line which connects the fuel pump to the fuel filter which, in turn, was attached to the carburetor; that the leaking gasoline was ignited from the hot motor, and the fuel pump continued to feed gasoline to the fire as long as the engine continued to run. This theory is based on the opinion of his expert that such causation is consistent with the complaints of poor carburetion and engine stalling. Haugen has pleaded inconsistent claims of strict liability, or negligence, or breach of implied or express warranty. Inconsistent claims may be pleaded under Rule 8(e), N.D.R.Civ.P.

The salient parts of the Basic Warranty provide:

"Ford * * * warrant * * * that the Selling Dealer will repair or replace at his place of business, any part * * * that is found to be defective in factory materials or workmanship in normal use * * * within 12 months from the date of original retail delivery or original use by Ford or any of its dealers, whichever is earlier.

\* \* \* \* \* \*

*"This warranty does not cover: damage from accidents, fire or other casualty,* * * * [Emphasis added.]

\* \* \* \* \* \*

"Ford * * * assume no responsibility hereunder for loss of use of the vehicle, loss of time, inconvenience, commercial loss or consequential damage. Except for responsibility for personal injuries shown to have resulted from a defect, this warranty is expressly in LIEU OF any other express or implied warranty, condition or guarantee with respect to the vehicle or any part thereof, including any implied WARRANTY OF MERCHANTABILITY OR FITNESS."

The decision of the trial court is based on exclusion of liability for damage from fire.

Both parties agree that there are questions of fact as to the defect, if any, and the cause of the fire. This question arises because differing opinions are averred by the experts in their affidavits filed in support of and in resistance to the motion for summary judgment as to defect and causation. However, the trial court did not find these issues of fact to be material to a decision of the controlling issue. The decision was based entirely on the disclaimer contained in the Basic Warranty, by which Ford had limited its liability, for consequential damages by excluding loss from fire, except for responsibility for personal injuries.

Although the trial court determined that the Uniform Commercial Code was not applicable because Ford was not a party to the sale to Haugen, both parties, in their arguments to this court, argue on the basis that the Uniform Commercial Code is applicable. We will first consider this issue as raised and argued by the parties.

Ford relies on Section 41–02–98(3) (2–719), N.D.C.C., which states:

"Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not."

Haugen premises his argument on the claim that the limitation or exclusion contained in the Basic Warranty, as applied by the trial court in this case, is unconscionable under Section 41–02–98(3)(2–719), N.D.C.C. He also cites Section 41–02–19(2–302), N.D.C.C., which provides:

"1. If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it

may so limit the application of any unconscionable clause as to avoid any unconscionable result.

"2. When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."

This suit is in the nature of a products-liability action, instituted by the buyer of an automobile directly against its manufacturer. We held in Lang v. General Motors Corporation, 136 N.W.2d 805 (N.D. 1965), that the lack of privity between a buyer and manufacturer is no defense where the manufacturer's product was sold under its trade name, and the manufacturer had placed the product in the stream of trade and had conducted an advertising campaign designed to cultivate the ultimate consumer. Although in this summary judgment proceeding there were no facts submitted to establish that Ford had conducted an advertising campaign designed to cultivate the ultimate consumer, such fact is of such common knowledge that the court may take judicial notice thereof. All the other elements are admitted. Further, Ford does not defend on the claim that there is a lack of privity.

Ford argues that the disclaimer of liability for fire is not against public policy or unconscionable, and cites in support thereof Knecht v. Universal Motor Company, 113 N.W.2d 688 (N.D. 1962), which was decided by this court prior to the effective date of the Uniform Commercial Code and while the Uniform Sales Act was in force. In Knecht we held that an express warranty disclaiming implied warranties was not contrary to public policy. In the body of that opinion we stated that we were not constrained to overrule our previous decisions in this area, which had been the law of the State for more than forty-two years (citing Minneapolis Threshing Mach. Co. v. Hocking, 54 N.D. 559, 209 N.W. 996

(1926)) without legislative change. Section 51–01–72, N.D.C.C., a part of the Uniform Sales Act then in effect, provided:

"Where any right, duty, or liability would arise under a contract to sell or a sale by implication of law, it may be negatived or varied by express agreement or by the course of dealing between the parties, or by custom, if the custom is such as to bind both parties to the contract or the sale."

This is the section which governed our decision in Knecht. We held that this section authorized the parties to a sale of personal property to negative by express agreement the implied warranty of quality of fitness provided by Section 51–01–16, N.D.C.C. Both sections were repealed by the adoption of the Uniform Commercial Code, which became effective July 1, 1966.

Section 41–02–94(2–715), N.D.C.C., authorizes the recovery of consequential damages for injury to property proximately resulting from any breach of warranty. However, under Section 41–02–98(2–719), N.D.C.C., quoted above, consequential damages, except for injury to the person, may be limited or excluded "unless the limitation or exclusion is unconscionable." Thus the Legislature has acted; it has spoken to the subject. The statutes which governed us in Knecht and Minneapolis Threshing Mach. Co. are no longer in effect. In adopting a new policy the Legislature did not define the word "unconscionable." Section 41–02–19(2–302), N.D.C.C., authorizes the court to refuse to enforce a contract or clause thereof if the court, as a matter of law, finds the contract or a clause thereof to have been unconscionable at the time it was made. This section requires that the court afford the parties a reasonable opportunity to present evidence as to the commercial setting, purpose and effect of the contract or a clause thereof to aid the court in making the determination. Thus it appears that the question of whether a contract or a clause thereof is unconscionable is one for

the courts, and legislative policy, as it existed under the Uniform Sales Act prior to the adoption of the Uniform Commercial Code, has been repealed. Therefore, *Knecht* is no longer applicable.

The conscionability of the clause which provides:

"This warranty does not cover: damage from accident, fire or other casualty, \* \* \*"

was determined by the trial court not to be unconscionable when it held:

"That the Basic Warranty and Limitation of Liability by Ford, the manufacturer, and Stockman, the dealer, and admittedly received by Haugen excluding loss by fire, except for responsibility for personal injuries, was not against public policy or *unconscionable.*" [Emphasis added.]

It appears the trial court held that the clause disclaiming liability for fire was not unconscionable *per se*. There is nothing in the record to indicate that evidence was received or an opportunity afforded the parties to "present evidence as to its commercial setting, purpose and effect to aid the court in making the determination" of conscionability. It appears that the claim of unconscionability did arise in the trial court because, following the summary judgment proceeding, Ford supplied the trial court with a trial brief which was made a part of the record in this appeal. In that brief Ford argues in support of the conscionability of the disclaimer. Further, the trial court, in its conclusions of law, determined that the disclaimer clause was not unconscionable. Thus we believe it fair to conclude that either it was claimed or it appeared to the court that the disclaimer "may be unconscionable" and, therefore, the question arises: Is subsection 2 of Section 41–02–19(2–302), N.D.C.C., mandatory "when it is claimed or appears to the court that the contract or any clause thereof may be unconscionable"?

Haugen claims that the disclaimer clause is unconscionable if it is construed to exclude liability for fire caused by a defect in the manufacture of the automobile. He argues that the clause should be construed to be applicable only where fire is caused by an outside force. Ford argues here, as it did in the trial court, that the clause is not unconscionable because "it is common knowledge that anyone buying a new automobile insures it against various losses, but particularly against loss by fire. If such a limitation of liability for fire was not included in the Basic Warranty, Ford would have to insure or sell insurance against such liability and pass the cost on to the buying public, hence, additional cost to the buyer without any more protection."

Pursuant to the statute, the question of conscionability is one of law for the court to decide and not for a jury. See subsection 1, Section 41–02–19(2–302), N.D.C.C. This subsection also allows the court to "limit the application of any unconscionable clause as to avoid any unconscionable result." This appears to have been the issue presented here.

"The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (citations omitted) and not of disturbance of allocation of risks because of superior bargaining power." Uniform Commercial Code, Master Edition 1, Section 2–302, Official Comment, at 137.

We have found but a few cases which are helpful in this area.

In Central Ohio Co-Op. Milk Producers v. Rowland, 29 Ohio App.2d 236, 281 N.E. 2d 42 (1972), the Court of Appeals for Washington County, in construing this section, held in paragraph 3 of the syllabus:

"Before a finding that the termination clause of a contract is unconscionable, the trial court must conduct an evidentiary hearing to determine whether that clause is in fact unconscionable in the light of its commercial setting, purpose and effect as required by R.C. § 1302.-15(B)."

In the body of the opinion, at 239, 281 N.E.2d at 44, the court said:

"Our research on the problem makes clear that the unconscionability of a clause is to be judged not in the abstract, but rather in its commercial setting."

The Court of Appeals reversed the trial court's holding that the contract was unconscionable, and remanded the case with instructions to conduct an evidentiary hearing to determine the question.

In Central Budget Corp. v. Sanchez, 53 Misc.2d 620, 279 N.Y.S.2d 391 (1967), the Civil Court of New York held that the buyer of an automobile was entitled to a reasonable opportunity to present evidence as to the commercial setting of a contract of sale to aid the court in determining whether the contract was unconscionable as a matter of law and that, therefore, the assignee of the contract was not entitled to a summary judgment in his action to enforce the contract.

In Zicari v. Joseph Harris Co., 33 A.D. 2d 17, 304 N.Y.S.2d 918 (1969), the Appellate Division of the Supreme Court of New York, in an action by the buyers of cabbage seed seeking consequential damages from the seller, alleging negligence and breach of warranty in the failure of the cabbage crop because of the presence of fungus in the seeds, held that the question of unconscionability of limiting recovery for breach of warranty to the purchase price of the seed when the crop failed because of fungus present in the seed was a matter of law for the court but that, under Section 2–302(2) of the Uniform Commercial Code, the court's determination of the issue could not be made without a hearing

and that, therefore, the normal rules of summary judgment were inapplicable.

▉ Under the circumstances of this case we hold that it was improper for the trial court to make a determination as to the conscionability of the disclaimer of liability-for-fire clause without a hearing affording the parties a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making that determination. Such a hearing obviously would be an adversary hearing in which genuine material issues of fact as to the question of conscionability would arise. Therefore, under Rule 56(c), N.D.R.Civ.P., summary judgment would be improper. Mondy v. Gjesdal, 123 N.W.2d 33 (N.D.1963); Temme v. Traxel, 102 N.W.2d 1 (N.D.1960).

For the reasons aforesaid and on the assumption that the Uniform Commercial Code is applicable as argued by the parties, we determine that the summary judgment should be reversed. However, as we will point out later, there may be other cogent reasons existing which also require reversal.

The trial court also concluded that Ford was not a party to the sale to Haugen and, therefore, was not a "seller" subject to the Uniform Commercial Code. This conclusion appears to be inconsistent with its conclusion that the limitation contained in the Basic Warranty was not unconscionable. We do not have the benefit of the trial court's reasoning as it did not prepare a memorandum of decision nor did it state its reasoning from the bench for the record. We assume that counsel prepared the order containing the conclusions. The conclusion that Ford was not subject to the Uniform Commercial Code is probably based on Ford Motor Company v. Pittman, 227 So.2d 246 (Fla.App. 1969). Outside of the provisions of the Uniform Commercial Code, it is the only case cited in the briefs on this issue.

The *Pittman* case is quite similar to the case at bar. Pittman had purchased a new

Ford from a dealer. After it had been driven less than 400 miles it was damaged by fire originating within the automobile. The buyer brought an action against Ford, the manufacturer, for breach of implied warranty of merchantability or fitness, or negligence in the manufacture of the automobile. Ford affirmatively pleaded that its written warranty disclaimed any implied warranty and urged that the Uniform Commercial Code permitted the manufacturer of automobiles to exclude implied warranties of merchantability and fitness by written disclaimer. The District Court of Appeal of Florida disagreed and held, without determining the question of conscionability of the disclaimer, that as a matter of law Ford was not the "seller" within the terms of the Uniform Commercial Code and, therefore, it could not extinquish its implied warranty of merchantability and fitness by proof of a written disclaimer executed under authority of the Uniform Commercial Code. The Florida court held that in order for a manufacturer to be entitled under the Uniform Commercial Code to disclaim implied warranties of merchantability and fitness, it must show that it is the seller within the terms of the Code, that there was in existence a contract of the type required by the Code, and that the disclaimer expressly negating implied warranty was part of such contract, rather than to show that such warranty and disclaimer were contained in a "little book" handed to the buyer at the time of the purchase. The court then reviewed the evidence and found that there was sufficient evidence to support the verdict of the jury that the automobile was not fit for the purpose intended, or was either negligently manufactured or negligently inspected, though no particular defect was identified.

In Lang v. General Motors Corporation, 136 N.W.2d 805, 807, *supra,* decided in 1965, prior to the effective date of the Uniform Commercial Code, we said that our decision in *Knecht* was not applicable in *Lang*. In *Lang*, the buyer of a truck-tractor brought suit against the manufacturer seeking damages for alleged negligence in manufacture, construction and assembly. The manufacturer defended on the ground that there had been no dealings between the buyer and the manufacturer, that there was no privity of contract between them, and that no implied warranties could arise from the purchase of such vehicle from a third party. In support of its argument it cited *Knecht* as holding that a general warranty given in lieu of all other warranties, express or implied, negatives implied warranties which would ordinarily arise. We said in *Lang, supra,* 136 N.W. 2d at 807, that *Knecht* was not applicable because "any possible disclaimer of liability, even under the ruling in Knecht, under no circumstances would be binding on the plaintiff [buyer] unless he agreed thereto. There is nothing in this record to show what, if anything, the plaintiff agreed to when he purchased the truck-tractor described in the complaint. Whether there was a waiver by the plaintiff would be a matter of defense, which cannot be decided on a motion for summary judgment."

A similar situation is indicated from the proofs adduced in the summary judgment proceeding in the case at bar. The proofs merely establish that Haugen was handed a booklet containing the Basic Warranty and Limitation of Liability. He signed no papers of any kind in connection with the purchase of the Lincoln automobile, except his personal check delivered to Stockman Motor, Inc., in payment. There is no proof that he agreed to the Basic Warranty and Limitation of Liability. In *Knecht,* the plaintiff-buyer had agreed, in writing, to an express warranty disclaiming all implied warranties. For the reasons aforesaid, we hold that if Ford is not subject to the Uniform Commercial Code, as found by the trial court, the issue of whether Haugen agreed to the Basic Warranty and Limitation of Liability by the manufacturer, Ford, is a matter of defense which cannot be decided on a motion for summary judgment, as there is no proof of

the relationship between Haugen and Ford except that Haugen was handed a booklet containing the Basic Warranty and Limitation at the time he took delivery of the automobile.

We believe that there are also other cogent reasons why the summary judgment in this case should be set aside. In his complaint Haugen, in addition to alleging breach of warranty, alleged negligence in the manufacture or strict liability as additional causes upon which he seeks recovery of damages.

 If, in a trial, Haugen would be able to prove negligence on the part of Ford, the manufacturer of the automobile, and that such negligence was a proximate cause of the damage for which he seeks recovery, the law would look with disfavor upon attempts of the manufacturer to avoid liability for its own fault. It appears to be the holding of the courts that under such circumstances a disclaimer of liability must plainly and precisely provide that limitation of liability extends to negligence or other fault of the party claiming the disclaimer. Willard Van Dyke Productions v. Eastman Kodak Co., 12 N.Y.2d 301, 239 N.Y.S.2d 337, 189 N.E.2d 693 (1963). Ford's disclaimer here makes no reference to negligence or other fault.

Although the theory of strict liability in products-liability cases has not been adopted in North Dakota, the theory has had wide acceptance in a number of states. The doctrine has received approval in Restatement of the Law, Second, Torts 2d, Section 402A, followed by several pages of comments. Section 402A, at 347, provides:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

The justification for imposing strict liability is said to be:

" * * * that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products." Restatement of the Law, Second, Torts 2d, Section 402A, Comment c, at 349.

Comment m of the Restatement states that a number of courts seeking a theoretical basis for strict liability have resorted to warranty, but suggests that if this is done it should be recognized and understood that the warranty is a very different kind of warranty from those usually found in the sale of goods, and one which is not subject to various contract rules which have grown up to surround sales. It further states, at 356:

"The rule stated in this Section is not governed by the provisions of the Uniform Sales Act, or those of the Uniform Commercial Code, as to warranties; and it is not affected by limitations on the scope and content of warranties, or by limitation to 'buyer' and 'seller' in those statutes."

■ It would thus appear that if Haugen should be successful in recovering judgment following trial on the theory of strict liability, and this court, on appeal, adopts the theory of strict liability on the basis of warranty, the disclaimer claimed by Ford under its Basic Warranty and Limitation of Liability would likely not be a limitation on the scope and content of such warranty.

For the various reasons stated herein, it appears to us that it was improper for the trial court to grant summary judgment in favor of the defendant, dismissing the complaint of the plaintiffs; that, also, in view of the various issues which were not settled by the proofs adduced at the summary judgment proceeding, it would also have been improper for the trial court to grant summary judgment in favor of the plaintiffs on their motion.

The summary judgment is reversed.

KNUDSON, PAULSON and VOGEL, JJ., concur.

ERICKSTAD, Chief Justice (dissenting).

Procedurally, the facts in the instant case are as follows: The plaintiffs Haugen and American Family served the defendant Ford Motor Company with a summons and complaint on January 25, 1971, in which they allege the facts upon which their claim for relief is based. The complaint contains no allegation that the Ford warranty covering the automobile is unconscionable. Ford responded with a motion for a more definite statement of the claim, seeking in particular the serial number of the automobile, in order to determine which warranty applied. As a result of that motion, an amended complaint was served upon Ford. The amended complaint alleged negligence, a breach of both implied and express warranties of fitness, and a claim for relief based upon strict liability; but it contained no allegation that the warranty was unconscionable or that the limitations thereto were unconscionable. The pertinent parts of the answer follow:

"VI.

"With reference to the allegations of the Amended Complaint regarding warranties, Defendant alleges that any warranties as alleged in said Amended Complaint were expressly waived and voided and in lieu thereof the Plaintiff, Haugen, accepted a basic warranty given expressly in lieu of any other express or implied warranty, condition or guaranty with respect to the vehicle or any part thereof, including any warranty of merchantability or fitness. * * *"

"VIII.

"Defendant alleges that the Plaintiff, Haugen, was negligent in the operation of the vehicle at the time of the alleged fire and that such negligence materially caused or contributed to the happening of the fire and resulting loss to plaintiffs."

"X.

"Defendant states that under the basic warranty herein before referred to, damage by fire is specifically excluded."

Ford served interrogatories upon American Family. Neither the interrogatories nor the answers thereto refer to the warranty or the unconscionability of the warranty or exclusions thereto.

The plaintiffs moved for summary judgment on the basis of the pleadings on file

and the depositions of the plaintiff Luther C. Haugen and of Dr. Ordean Anderson, a forensic engineer. The plaintiffs' motion for summary judgment contains no challenge to the basic Ford warranty as being unconscionable. Affidavits of engineers were submitted by both parties and an affidavit of the shop foreman in charge of repair work at the garage where the automobile was purchased was submitted by Ford. The affidavits deal with factual data and opinions as to the cause of the fire. Nothing in the affidavits is directed at the unconscionability of the basic warranty.

There were three separate hearings on the motions for summary judgment. The first was held on July 24, 1972. Several affidavits and documents were submitted. A second hearing, on September 11, 1972, was held to allow Ford to submit an additional affidavit of one of its engineers. A third hearing on the motion was scheduled for March 20, 1973, at which time plaintiffs submitted a further affidavit of their expert engineer. At this third hearing, Ford filed a trial brief in support of its motion for summary judgment. Ford stated it wished to argue primarily that it was entitled to a summary judgment as a matter of law. Both parties stated they had no further evidence to submit. The court stated it would take the motion under advisement and would hear arguments of counsel off the record. Both Ford and plaintiffs agreed that such arguments should be held off the record. Thereafter the hearing concluded. There is nothing in the record of the trial court proceedings to indicate that the plaintiffs ever asserted that the basic Ford warranty was unconscionable.

We do not know what was argued off the record, but in Ford's trial brief we note the following:

"The question now involved is whether the disclaimer of liability for fire is against public policy or unconscionable."

Ford contended in its trial brief that its warranty excluded damages caused by fire and that this exclusion was not unconscionable. There is no evidence in the record that plaintiffs submitted a brief in opposition thereto in which the conscionability of the warranty or of the exclusion was challenged.

The only other reference to unconscionability is found in the trial court's conclusions of law, wherein it is stated that the basic warranty and limitation of liability are not against public policy or unconscionable.

The briefs of the parties on appeal discuss the question of unconscionability.

In the plaintiffs' appellate brief we find the following:

"The trial court was not presented with any evidence to support its conclusion of law that the disclaimer was not unconscionable.

"Thus, under the test of Section 41–02–19, N.D.C.C., the disclaimer is unconscionable and not entitled to enforcement."

The plaintiffs assert that the trial court was not presented with any evidence to support its conclusion that the warranty was not unconscionable. However, plaintiffs fail to point out how the record discloses that the warranty is unconscionable. They apparently desire a determination of this issue without a further hearing. They do not ask for a remand.

Ford's argument also contemplates a determination of the issue without a remand for a further hearing.

"There is no injury to the person of anyone involved in this case, and obviously the loss is commercial; hence, the trial judge, in ruling that the limitation of liability and disclaimer was not unconscionable is perfectly clear."

In essence, the plaintiffs assert that the facts and circumstances existing at the time of the purchase of the automobile in question do not support the findings of the

trial court that the disclaimer of liability and limitation of damages were not unconscionable. They rely upon the fact that plaintiff Haugen was not required to sign or consent to the terms of the warranty, that the transaction was not a bargained-for transaction between parties of equal standing, and that Ford made no effort to make Haugen aware of the meaning of the warranty and disclaimer.

Ford counters with the argument that, in essence, to hold the warranty and limitation unconscionable would require Ford to go into the insurance business, resulting in higher costs to the consumer; that its basic warranty and disclaimer are in accordance with the provisions of the Uniform Commercial Code; that the pertinent portions of the warranty and disclaimer are printed in capital letters and very conspicuous; and that Haugen was aware of the existence of a warranty and charged with the knowledge of its contents.

On the basis of the briefs and arguments presented by both parties on appeal, they are expecting this court to make a determination of the conscionability issue, not to send it back for a hearing.

I would conclude that the majority, by remanding the case for trial, has merely postponed to another day the decision the parties are requesting be made now. In light of the record made by the parties thus far, it not likely that this court will be in any better position to decide this issue when the trial has been completed.

This action is not between the plaintiff purchaser and some local dealer, but is between the purchaser and the manufacturer.

What evidence could be produced on a remand relevant thereto is a mystery to me.

It is also my opinion that we should decide all issues involved in the granting of the motion for summary judgment at this time and not merely say that since the matter must be remanded on the unconscionability issue that eliminates the necessity of deciding the other issues, of negligence, strict liability, and the applicability of the Uniform Commercial Code.